# COMMERCIAL NATIONAL BANK OF NEW OR-LEANS v. CANAL-LOUISIANA BANK & TRUST COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 117. Argued December 8, 1915.—Decided January 10, 1916.

One who has no title to chattels cannot transfer title unless the owner has given authority or is estopped, nor can he, in the absence of such authority or estoppel, transfer title by warehousing the goods and endorsing the receipts. If, however, the owner of chattels clothes another with apparent ownership through the possession of warehouse receipts negotiable in form, a *bona fide* purchaser for value to whom the receipts are negotiated can be protected.

The clear import of the applicable provisions of the Uniform Warehouse Receipts Act enacted in Louisiana in 1908, is that if the owner of goods permits another to have possession or custody of negotiable warehouse receipts running to the latter or to bearer, it is a representation of title upon which *bona fide* purchasers for value may rely, notwithstanding breaches of trust or violations of agreement on the part of the apparent owner.

The provision in § 57 of the Uniform Warehouse Act as enacted in Louisiana in 1908, and as the same has been enacted in other States, that the Act is to be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it, is a rule of construction that prevents the Act from being regarded as an offshoot of local law to be construed in the light of decisions under former statutes of the enacting State, and requires the statute to be construed in the light of the cardinal principle of the Act itself.

The Uniform Acts relating to commercial affairs have been enacted in various States for the beneficent object of unifying so far as possible under one dual system of government the commercial law of the country, and to give effect, within prescribed limits, to the mercantile view of documents of title, and this principle should be recognized in construing the acts to the exclusion of any inconsistent doctrine previously obtaining in any of the enacting States.

Where the holder of warehouse receipts clothes another with such

indicia of ownership of the goods that a *bona fide* purchaser for value is enabled to take title thereto, the rule that the earlier of equal equities should prevail does not apply, as the later equities are based upon the action of the holder of the earlier equity who is estopped thereby.

In a controversy between claimants of goods, *held* that giving to another negotiable bills of lading under trust receipts which authorized the taker to receive the avails of the goods or the documents therefor, so clothes the latter with indicia of ownership of the goods that the equities of a *bona fide* purchaser for value of warehouse receipts obtained for the goods on the bills of lading surrendered in exchange therefor are superior to those of the original owner of the bills of lading who had endorsed and delivered them under trust receipts which had been violated by the party transferring to the later purchaser.

211 Fed. Rep. 337, reversed.

THE facts, which involve the determination in a bankruptcy proceeding of conflicting rights of pledgees of the same goods represented by warehouse receipts therefor, and the construction and application of provisions of the Uniform Warehouse Receipts Acts of Louisiana, are stated in the opinion.

*Mr. Edwin T. Merrick* for appellant.

*Mr. Henry Mooney* for appellee:

The Negotiable Warehouse Receipts Act of Louisiana does not change fundamental principles, and one who takes by trespass, or a finder, is not included within the description of those who may negotiate.

The title of the cotton was vested in first pledgee.

Where titles are equal the more ancient prevails and when equities are equal the first in point of time prevails.

The debtor cannot confer on the creditor by the pledge any further right than he himself has.

Cases in other jurisdictions based upon statutes which differ from the provisions of Louisiana's Code have no bearing on this case.

Numerous authorities sustain these contentions.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a controversy arising in a bankruptcy proceeding. The Commercial National Bank of New Orleans petitioned the District Court for the recovery from the trustee in bankruptcy of certain bales of cotton alleged to have been held by the bankrupts, Dreuil & Company, for the account of the petitioner under trust receipts. The Canal-Louisiana Bank & Trust Company defended, presenting its reconventional demand based upon a claim of superior title. The District Court entered a decree in favor of the Canal-Louisiana Bank & Trust Company (205 Fed. Rep. 568), which was affirmed by the Circuit Court of Appeals. 211 Fed. Rep. 337.

The controversy arises from the following transactions which were had prior to the bankruptcy. On December 9, 1912, Dreuil & Company holding inland bills of lading for two lots of cotton (forty bales and sixty bales respectively) pledged the bills of lading with the Canal-Louisiana Bank to secure certain promissory notes for moneys advanced. On December 13, 1912, the bills of lading were withdrawn from the Canal-Louisiana Bank on trust receipts, as follows:

"Received of Canal Bank & Trust Company the bills of lading or other documents or securities as enumerated below, held by the said bank as collateral pledged to secure advances made to the undersigned, and in consideration thereof, the undersigned hereby agrees to pay over to the said bank or its assignees, and to specifically apply against the very same advances the proceeds of the sale of the property mentioned in the said documents; or to deliver to the said bank or its assignees the shipping documents or warehouse receipts representing the under-mentioned goods within one day from the receipt thereof, this delivery being temporarily made the undersigned for convenience only, without novation of the original debt, or giving the undersigned any title thereto, except as

trustee for the said bank, and except to receive the avails thereof or the documents therefor for account of the said bank."

Dreuil & Company, surrendering the bills of lading to the railroad company, obtained delivery of the cotton and sent it to a 'pickery,' where the lot of forty bales was remade into sixty, and the lot of sixty bales into ninety. Dreuil & Company then stored the cotton with a warehouseman, the Planters' Press, receiving two negotiable warehouse receipts which, on December 17, 1912, they pledged to the Commercial Bank as security for their notes. On December 20, 1912, and December 28, 1912, these warehouse receipts, respectively, were withdrawn by Dreuil & Company from the Commercial Bank on trust receipts similar in tenor to those which had been given, as above stated, to the Canal-Louisiana Bank. Dreuil & Company then obtained a delivery of the cotton from the Planters' Press; on December 31, 1912, they were adjudicated bankrupts and temporary receivers were appointed. It appears that sixty of the bales had been disposed of, but the remainder of the cotton, which had been sent by Dreuil & Company to a steamer for shipment, was recovered by the receivers and placed by them in the Planters' Press, warehouse receipts being issued therefor which passed into the possession of the trustee. Despite the changes mentioned, and remarkings (which we need not consider), the District Court found the identity of the cotton to be established, and there is no further controversy upon that point. Nor is it controverted that the Commercial Bank was a purchaser in good faith for value of the warehouse receipts negotiated to it.

We assume that under the jurisprudence of Louisiana the transaction between Dreuil & Company and the Canal-Louisiana Bank (described by the bank as a pledge) created rights in the bank in the nature of ownership for the purpose of securing its advances (Rev. Stat. of Louis-

iana, 2482; Civil Code, Arts. 3157, 3158, 3170, 3173; *Fidelity & Deposit Co.* v. *Johnston*, 117 Louisiana, 880, 889; Act 94 of 1912 (Uniform Bills of Lading Act), § 32; and that when the Canal-Louisiana Bank entrusted the bills of lading to Dreuil & Company for the purposes described in the trust receipts, given to that bank, it could still assert its title as against Dreuil & Company and their trustees in bankruptcy. See *Clark* v. *Iselin*, 21 Wall. 360, 368; *In re E. Reboulin Fils & Co.*, 165 Fed. Rep. 245; *Charavay* v. *York Silk Mfg. Co.*, 170 Fed. Rep. 819; *In re Cattus*, 183 Fed. Rep. 733; *Century Throwing Co.* v. *Muller*, 197 Fed. Rep. 252; *In re Dunlap Carpet Co.*, 206 Fed. Rep. 726; *Assets Realization Co.* v. *Sovereign Bank*, 210 Fed. Rep. 156; *Moors* v. *Kidder*, 106 N. Y. 32; *Drexel* v. *Pease*, 133 N. Y. 129; *Moors* v. *Wyman*, 146 Massachusetts, 60; *Moors* v. *Drury*, 186 Massachusetts, 424; *Brown* v. *Billington*, 163 Pa. St. 76; Williston on Sales, § 437. No question is presented as to the effect, in the light of the Uniform Bills of Lading Act passed in Louisiana in 1912 (Act 94), of an attempted negotiation by Dreuil & Company of the bills of lading contrary to the terms of the trust receipts. See *Roland M. Baker Co.* v. *Brown*, 214 Massachusetts, 196, 203. The bills of lading were not negotiated; they served their purpose, being surrendered to the railroad company on the delivery of the goods to Dreuil & Company. The transactions with the 'pickery' are not material to the question to be decided. Dreuil & Company having obtained possession of the cotton, as was contemplated, placed it in store and the question is as to the effect of the negotiation of the warehouse receipts to the Commercial Bank.

It is a familiar rule that one who has no title to chattels cannot transfer title unless he has the owner's authority or the owner is estopped. See Civil Code (La.), Arts. 2452, 3142, 3145, 3146. It follows that, in the absence of circumstances creating an estoppel, one without title can-

not transfer it by the simple device of warehousing the goods and endorsing the receipts. But if the owner of the goods has permitted another to be clothed with the apparent ownership through the possession of warehouse receipts, negotiable in form, there is abundant ground for protecting a *bona fide* purchaser for value to whom the receipts have been negotiated. *Pollard* v. *Reardon*, 65 Fed. Rep. 848, 852; Williston on Sales, § 421. The effect of the negotiation of warehouse receipts is defined in the Uniform Warehouse Receipts Act, enacted in Louisiana by Act 221 of 1908. This act provides:

"Sec. 40. *Who May Negotiate a Receipt*—A negotiable receipt may be negotiated—

"(a). By the owner thereof; or

"(b). By any person to whom the possession or custody of the receipt has been entrusted by the owner, if, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of the person to whom the possession or custody of the receipt has been entrusted, or if at the time of such entrusting the receipt is in such form that it may be negotiated by delivery."

"Sec. 41. *Rights of Person to Whom a Receipt Has Been Negotiated*—A person to whom a negotiable receipt has been duly negotiated acquires thereby—

"(a). Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value; and

"(b). The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

\*     \*     \*     \*     \*     \*     \*     \*

"SEC. 47. *When Negotiation Not Impaired by Fraud, Mistake, or Duress*—The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was induced by fraud, mistake, or duress to entrust the possession or custody of the receipt to such person, if the person to whom the receipt was negotiated, or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty, or fraud, mistake, or duress."

It will be observed that 'one who takes by trespass or a finder is not included within the description of those who may negotiate.' (Report of Commissioners on Uniform State Laws, January 1, 1910, p. 204.) Aside from this, the intention is plain to facilitate the use of warehouse receipts as documents of title. Under § 40, the person who may negotiate the receipt is either the 'owner thereof,' or a 'person to whom the possession or custody of the receipt has been entrusted by the owner' if the receipt is in the form described. The warehouse receipt represents the goods, but the entrusting of the receipt, as stated, is more than the mere delivery of the goods; it is a representation that the one to whom the possession of the receipt has been so entrusted has the title to the goods. By § 47, the negotiation of the receipt to a purchaser for value without notice is not impaired by the fact that it is a breach of duty or that the owner of the receipt was induced 'by fraud, mistake or duress' to entrust the receipt to the person who negotiated it. And, under § 41, one to whom the negotiable receipt has been duly negotiated acquires such title to the goods as the person negotiating the receipt to him, or the depositor or person to whose order the goods were deliverable by the terms of the receipt, either had or 'had ability to convey to a purchaser in good faith for value.' The

clear import of these provisions is that if the owner of the goods permits another to have the possession or custody of negotiable warehouse receipts running to the order of the latter, or to bearer, it is a representation of title upon which *bona fide* purchasers for value are entitled to rely, despite breaches of trust or violations of agreement on the part of the apparent owner.

It cannot be doubted that if Dreuil & Company had pledged to the Commercial Bank the bills of lading which they withdrew from the Canal-Louisiana Bank under the trust receipts, the former paying value in good faith would have had the superior right.   This would have been directly within the terms of the Uniform Bills of Lading Act (La. Act 94, 1912, §§ 31, 32, 38, 39).   *Roland M. Baker Co.* v. *Brown, supra.*   See *Hardie* v. *Vicksburg S. & P. Ry.*, 118 Louisiana, 254.   It seems to be contended that the case is different with the warehouse receipts.   But it cannot be said that it was not within the contemplation of the parties that Dreuil & Company, on obtaining the goods from the railroad company, should put them in warehouse and take the usual receipts.   As we have stated, we are not concerned with what happened at the 'pickery,' as the case is precisely the same, so far as the Commercial Bank is concerned, as if the original bales had been warehoused (without remaking) as soon as received.   It was not the placing of the cotton in warehouse in the usual course of business, but the negotiation of the receipts, that constituted the violation of Dreuil & Company's agreement with the Canal-Louisiana Bank.   By the very terms of that agreement Dreuil & Company were to take the position of 'trustee' for the bank with authority to receive 'the avails' of the goods or 'the documents' therefor for account of the bank and being bound to apply the proceeds of sale to the bank's advances.   And in taking documents of title, in ordinary course, pursuant to the agreement which was intended to facilitate the

disposition of the cotton through Dreuil & Company, the latter were manifestly permitted to take such documents to their own order, as they took the bills of lading with which they were entrusted. To repeat, it was the *negotiation* of the receipts that constituted the breach of trust. But after the Canal-Louisiana Bank had allowed Dreuil & Company to be clothed with apparent ownership through possession of the receipts it cannot be heard to question the title of a *bona fide* purchaser for value to whom they had been negotiated. *In re Richheimer*, 221 Fed. Rep. 16.

It is said that under the law of Louisiana, as it stood prior to the enactment of the Uniform Warehouse Receipts Act, the Commercial Bank would not have taken title as against the Canal-Louisiana Bank (*Stern Bros.* v. *Germania-National Bank*, 34 La. Ann. 1119; *Lallande* v. *His Creditors*, 42 La. Ann. 705; *Holton* v. *Hubbard*, 49 La. Ann. 715; *Insurance Co.* v. *Kiger*, 103 U. S. 352; but see *Hardie* v. *Vicksburg S. & P. Ry.*, *supra*); and it is urged that the new statute is but a step in the development of the law and that decisions under the former state statutes are safe guides to its construction. We do not find it necessary to review these decisions. It is apparent that if these Uniform Acts are construed in the several States adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws. It was to prevent this result that the Uniform Warehouse Receipts Act expressly provides (§ 57): "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it." This rule of construction requires that in order to accomplish the beneficent object of unifying, so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the funda-

mental purpose of the Uniform Act and that it should not be regarded merely as an offshoot of local law. The cardinal principle of the Act—which has been adopted in many States—is to give effect, within the limits stated, to the mercantile view of documents of title. There had been statutes in some of the States dealing with such documents, but there still remained diversity of legal rights under similar commercial transactions. We think that the principle of the Uniform Act should have recognition to the exclusion of any inconsistent doctrine which may have previously obtained in any of the States enacting it; and, in this view, we deem it to be clear that in the circumstances disclosed the Commercial Bank took title to the warehouse receipts and to the cotton in question.

Finally, it is insisted that whatever right the Commercial Bank might have had, if it had retained the warehouse receipts, it lost as against the Canal-Louisiana Bank by permitting Dreuil & Company to withdraw the documents under the trust receipts which they gave to the Commercial Bank; that is, that as the cotton came into the possession of Dreuil & Company the equities of the two banks are equal and the earlier equity should prevail. We think that this contention begs the question. The Commercial Bank did not lose its rights, by permitting the withdrawal of its warehouse receipts under the agreement to hold for its account, any more than the Canal-Louisiana Bank lost its rights merely by the withdrawal of the bills of lading under its trust receipts. It was because the Canal-Louisiana Bank clothed Dreuil & Company with the *indicia* of ownership that a *bona fide* purchaser for value was enabled to take title; and a similar result would have followed if, after the withdrawal of the warehouse receipts from the Commercial Bank, there had been a like negotiation by Dreuil & Company. But there was no subsequent negotiation, and the Commercial

Bank in the absence of the intervention of a purchaser in good faith for value did not lose its rights by the agreement under which the cotton which it had duly acquired was to be held for its account. There is no equality of equities, for it was through the action of the Canal-Louisiana Bank and the apparent ownership it created in Dreuil & Company that the Commercial Bank was led to advance its money upon the faith of the documents of title.

The decree is reversed and the cause is remanded with direction to enter a decree in favor of the appellant.

*It is so ordered.*