## TRADERS COMPRESS CO. v. PRECURE.

No. 18247. Opinion Filed Sept. 17, 1929.

Rehearing Denied Nov. 26, 1929.

Ames, Lowe & Cochran, for plaintiff in error.

Goode & Dierker and Kittie C. Sturdevant, for defendant in error.

LESTER, V. C. J. This case is here on a second appeal. See Traders Compress Company v. Precure, 107 Okla. 191, 231 Pac. 516.

For convenience, the parties to this appeal will be referred to as they appeared in the court below.

The plaintiff, O. K. Precure, was the owner of seven bales of cotton which he had stored with the Compress Company, and said cotton, together with 9,000 additional bales, while stored in the compress of the defendant at Shawnee, Okla., was destroyed by fire. The value of the cotton belonging to plaintiff was stipulated by the parties to the action to be worth $461.25.

Upon the original trial of the cause to the court and jury, the plaintiff recovered judgment for the amount fixed by stipulation between the parties. The defendant appealed from that judgment to this court, and this court by its opinion and judgment rendered on the 7th day of October, 1924, reversed the cause and remanded it for a new trial. Upon the retrial of said action before the court and jury, judgment was again entered in favor of the plaintiff and against the defendant for the agreed value of the plaintiff's cotton.

It appears the plaintiff on his original petition recovered judgment in the trial court against the defendant upon the ground that the defendant was a public warehouseman and that it owed the plaintiff the duty of insuring, for the benefit of plaintiff, the cotton stored by him with defendant. This court in its opinion and judgment on the first appeal, among other findings, held, that the defendant was not a public warehouseman in contemplation of section 11113 and section 11122, C. O. S. 1921, and, therefore, would not be held liable for its failure to insure the said cotton for the benefit of the plaintiff.

After the cause had been reversed and remanded to the superior court of Pottawatomie county, the plaintiff filed an amended petition in which he alleged, in substance, that he had delivered to the defendant seven bales of cotton; that defendant had accepted the said cotton for storage and agreed in writing to safely store the same and deliver the said cotton to the plaintiff or his order; that said agreement was contained in certain warehouse receipts issued by the defendant to plaintiff; that thereafter the plaintiff demanded of the defendant said cotton so stored and offered to pay all lawful charges on said storage and to surrender the receipts issued therefor; that after said demand the defendant thereupon refused to make delivery of said cotton or any part thereof.

To the amended petition of the plaintiff the defendant filed its answer. Paragraph 4 of said answer of the defendant stated and alleged that the cotton was: "without fault of negligence on the defendant's part, destroyed by fire which destroyed the defendant's compress."

To the answer of the defendant the plaintiff filed the following reply:

"Comes now the plaintiff and for reply to the answer of the defendant, alleges and says that he denies all and singular each and every material allegation in said answer contained."

Upon trial of the cause the attorney for the plaintiff upon his opening statement confined his claim for recovery upon the delivery of the cotton to the defendant, a demand being made therefor, and the failure of the defendant to deliver upon demand. After the close of the opening statement of the plaintiff, counsel for the defendant made his statement to the court and jury, which statement in substance was that the cause of the failure to deliver to the plaintiff the cotton theretofore stored was on account of its loss by fire of an unknown origin.

The plaintiff in his testimony in chief confined his evidence to the contract of bailment and the issuance of said warehouse receipts.

After the close of plaintiff's testimony the defendant filed its demurrer, which was by the court overruled, to which the defendant excepted. The defendant then introduced several witnesses tending to show that a night watchman was employed to stay on duty all night; that the night watchman was required to use a punch clock and make a round every half hour; the manner of dividing the platform into compartments by a

fire wall; the distribution of fire hydrants at compress; frequency in sweeping the floor of the compress; patrol of platform at compress; whereabouts of night watchman just before and after the discovery of the fire; equipment for extinguishing fire at the compress.

The plaintiff, after the close of the defendant's testimony, filed a demurrer to the testimony of the defendant, which was by the court overruled, to which the plaintiff excepted. Thereupon the plaintiff called a number of witnesses in rebuttal, and they testified, in part, tending to show that certain witnesses were near the compress when it was on fire and did not see any one there, nor did they see the night watchman until several minutes after the discovery of the fire; that the compress had no fire hydrants outside or near compress; that they saw boys playing on the cotton at the compress; that there was a hole in fire wall below platform; that the fire department had been notified of the fire previous to the call of the night watchman.

After the plaintiff closed its testimony in rebuttal the defendant offered several witnesses in surrebuttal.

The court in its instructions placed the burden of proof upon plaintiff to show negligence upon the part of the defendant in the loss of the cotton.

The defendant in its petition in error set forth 36 assignments of error. The defendant in its brief consolidated all of its assignments of error into five propositions.

The first proposition presented by the defendant is that the pleadings in the case did not present an issue of negligence, and, therefore, the court committed error in submitting that issue to the jury.

As we view the pleadings and order of proof as shown by the record, we cannot agree with the contention of the defendant. The plaintiff set forth in its petition a contract of bailment; a demand for the property; the refusal by bailee to deliver to bailor. The bailee answered by admitting the bailment and excusing his failure to deliver by alleging that the cotton, "without fault or negligence on the defendant's part, was destroyed by fire which destroyed the defendant's compress." Plaintiff, after proving his contract of bailment, the demand and refusal of the bailee to deliver the cotton, thereupon closed his evidence. The defendant then introduced a number of witnesses to prove the allegations of its answer by

showing that the cotton was destroyed by fire without fault or negligence on its part. When defendant closed its testimony, the plaintiff sought to show that the defendant was guilty of negligence and was not without fault in the premises. We see no error in order of proof or variance in the order of proof. In fact, it appears that after the plaintiff had made out a prima facie case, the defendant then invited the order of proof that was thereafter followed in the trial of the case.

In the case of Chautauqua State Bank v. Lewis et al., 99 Okla. 223, 226 Pac. 342, and Throm v. Hollister et al., 92 Okla. 233, 219 Pac. 115, this court refused to reverse the judgment on the ground of variance unless the defendant could show in what respect it had been misleading and to the injury of the complaining party. There is no merit in the defendant's first proposition.

The defendant's second proposition is as follows:

"When the bailee pleaded that the property had been destroyed by fire, that constituted a lawful excuse for a failure or refusal to deliver, and if the bailor contended that the fire was due to the bailee's negligence, the burden was upon him to plead and prove such negligence."

Under the plaintiff's petition, the defendant's answer, and the plaintiff's reply thereto, together with the character of evidence introduced by the defendant on its answer, we think the defendant invited error, if any, set forth in its second proposition, and ordinarily where a party has invited an alleged error, we would not consider the same, but for the fact that in this case both parties have leveled most of their arguments on the question as to upon whom rested the burden of proof.

Prior to and independent of the adoption of the Uniform Warehouse Receipts Act, which became effective in this state on June 22, 1915, the cases in this state dealing with bailments generally held that where property was destroyed or lost while in the possession of the bailee and the bailor sought to recover, the court held that the burden was upon the plaintiff to maintain his action and that such burden continued throughout the case. See Scott Auto & Supply Co. v. McQueen, 11 Okla. 107, 226 Pac. 372; Ft. Smith & Western R. Co. et al. v. Syracuse Portrait Co., 117 Okla. 113, 245 Pac. 600; Standard Marine Ins. Co., Ltd., of Liverpool v. Traders Compress Co, 46 Okla. 356, 148 Pac. 1019; Stone v. Case, 34 Okla. 5, 124 Pac. 960.

Section 11130, C. O. S. 1921, of the Uniform Warehouse Receipts Act provides:

"A warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with:

"(a) An offer to satisfy the warehouseman's lien.

"(b) An offer to surrender the receipt, if negotiable, with such indorsements as would be necessary for the negotiation of the receipt; and

"(c) A readiness and willingness to sign, when the goods are delivered and acknowledgment that they have been delivered, if such signature is requested by the warehouseman.

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositer so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

In the case of Citizens' State Bank of Vici v. Gettig, 77 Okla. 48, 187 Pac. 217, this court held:

"The Uniform Warehouse Receipts Act defines and fixes the rights and liabilities of the parties in the storing of grain, and is a full and complete treatise on the subject, and makes no distinction between public and private warehouses or between bonded and unbonded warehouse, but regulates the storage of goods."

Therefore, the defendant compress company, although a private warehouse, comes within the terms of the above-quoted statute.

Both parties to this appeal claim that the former opinion and judgment of this court in the case of Traders Compress Co. v. O. K. Precure, supra, is favorable to their respective contentions, and, therefore, it becomes necessary for us to return to the opinion of this court rendered in the former appeal. This court there held:

"We are not in accord with the views of those courts holding that where recovery is sought, based on the negligence of the warehouseman, the statute has changed the rule as to the burden of proof, for the reason that the statute under consideration deals only with the rights, duties, and liabilities of the parties under the contract of bailment as embodied in the warehouse receipt. The act does not deal with the burden of proof in actions sounding in tort, or with the law of negligence, and nowhere evinces an intention on the part of the Legislature to

in any manner modify the rules at common law in cases founded on negligence.

"Under the statute, the warehouseman is made liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he is not rendered liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of reasonable care, and if he fails or refuses to deliver the goods in compliance with a proper demand by the depositor or holder of the warehouse receipt, the burden is upon him to establish the existence of a lawful excuse for such failure or refusal.

"This statutory provision works no radical change either in the law or procedure. The universal rule is that if one be sued on a contract of any character executed by him, he must, in order to avoid liability, show a lawful excuse for his failure to perform. This is an affirmative defense, the burden of proving which is cast upon him, and the statute does no more than provide what shall constitute this affirmative defense in actions within its purview. Hence, if an action be brought by the owner against a warehouseman upon the contract of bailment for the recovery of stored goods or their value, the warehouseman must excuse his failure to comply with the contract; this he may do by showing that the goods were lost and that the loss was due to causes consistent with due care on his part. This has been held to be the rule irrespective of statute. 6 C. J. 1158. In such case, where the plaintiff has proven the bailment, a tender of all charges, a demand for the goods, and the warehouseman's failure or refusal to return, a prima facie case has been made out, and it is then incumbent upon the warehouseman to overcome this prima facie case by showing that the goods have been lost, and that he exercised due care to prevent such loss.

"On the other hand, if the holder of the receipt or depositor elects to found his cause of action upon the negligence of the warehouseman, instead of upon the contract of bailment, he must recover, if at all, upon proof of negligence as alleged."

We interpret the above language to mean just what it says, that is, if the bailor sues the warehouseman in tort and alleges the warehouseman was negligent or at fault in the loss and destruction of the goods, the bailor must sustain his case throughout by the burden of proof.

On the other hand, if the bailor sues on contract, alleging the delivery of the goods to the warehouseman, thereafter makes a lawful demand for the return of the goods, and the warehouseman refuses or fails to

return the said goods, the warehouseman must then, in order to legally excuse himself, show that the said goods were lost or destroyed without his fault or negligence.

The above rule is not only justified by section 11130, supra, but is sustained in many of the courts of the several states of the Union, where such states have adopted the Uniform Warehouse Receipts Act, although there are a number of states that have adopted the Warehouse Receipts Act in which the courts thereof hold to a contrary view; but we think the rule heretofore adopted by this court on the former appeal of this case is more sound, reasonable, and logical, for, as said in the case of Leckie v. Clemens, 135 Md. 264:

"It would, therefore, seem that the rule in this state, as now established, places upon the bailee the burden of proving due care, or overcoming the presumption of negligence. The goods are in the possession of the defendant or bailee, and usually upon his premises at the time the injury or loss occurs, and he knows, or is presumed to know, not only the condition of the premises, but also what is going on there in respect to such goods, and thus he is in a far better position to explain or account for their injury or loss than the bailor, who, generally speaking, has no such information, and at times can not acquire it. In many cases the bailee might be guilty of the grossest negligence and yet, because of the character of his exclusive possession and custody of the goods, it would be almost impossible for the bailor to show such negligence; while, on the other hand, the bailee, with the information ordinarily possessed by him, could show without difficulty, in most cases, that he had exercised proper care in respect to such goods, if such was the fact, and be relieved of all liability."

In the case of Beck v. Wilkins-Ricks Co. (N. C.) 102 S. E. 313, the court in its syllabus No. 5 announced the following rule:

"Where bailee claims that the property has been destroyed, stolen, or injured without any fault on his part, the question of bailee's negligence was for the jury; such occurrences being out of the ordinary course of events, and the facts being peculiarly within the knowledge of the bailee."

In the case of Fleischman, Morris & Co. v. Southern Ry. Co. (S. C.) 56 S. E. 974, the court said:

"The conflict of authority and the unsatisfactory state of the law elsewhere is alluded to only to make it clear that the rule established in this state by Wardlaw v. Railway Co., 11 Rich. Law. 337, and followed in Brunson & Boatwright v. Railway Co. (S. C.) 56 S. E. 538, is not opposed to any

well-defined or straight-flowing current of judicial thought in this country.

"The rule in this state, as indicated by the cases above referred to, is that the bailor must prove delivery to the bailee and his refusal to return as required by the contract of bailment. The burden is then on the bailee to prove that he has not converted the property, and this he may do by showing its loss and the manner of its loss; but by the manner of loss is meant, not only the isolated fact of destruction by fire, or loss by theft or otherwise, but the circumstances connected with the origin of the fire or other cause of loss or injury as far as known to the bailee, and the precautions taken to prevent the loss or injury. From these facts coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee was negligent. This rule is entirely reasonable. The facts surrounding the loss, particularly the precautions taken against it, are usually known to the bailee or ascertainable by him. On the other hand, the owner of the property cannot be supposed to know the details of a warehouseman's business, for he is often hundreds of miles away. With the great modern development of the warehouse business, we venture to think the injustice of the rule which exempts a warehouseman from responsibility to the owner on the bald proof of loss or injury to the goods by fire, by theft, or otherwise, will become more and more apparent. In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care is to impose an impossible task and place him more than ever at the mercy of the warehouseman. We are satisfied, therefore, to adhere to the somewhat exceptional rule laid down in this state, notwithstanding the great number of opposing authorities in other jurisdictions."

The case of Rudy v. Quincy Market Cold Storage & Warehouse Co. (Mass.) 144 N. E. 286, involved the construction of the Uniform Warehouse Receipts Act in the state of Massachusetts. Said act provided in part:

"A warehouseman, in the absence of a lawful excuse provided by this chapter, is bound to deliver the goods upon a demand. (Here follow conditions with which there must be compliance.) If the warehouseman refuses or fails to deliver the goods in compliance with a demand, * * * the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal or failure."

The court announced the rule to be:

"In action against warehouseman for damages from failure of defendant to return all merchandise stored, burden of proof is on defendant to show that goods were lost or taken from it without its fault, that it used reasonable diligence, and that there existed lawful excuse for refusing or failing to deliver, under G. L. c. 105, sections 15, 27, 66."

Also the case of Caldwell et al. v. Skinner et al., 100 Kan. 567, 164 Pac. 1166, involved a contract of bailment and the statutes of that state provided in part:

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal." Gen. Stat. 1915, section 4422.

The court there said:

"Under the statute, if it be shown that goods were delivered to the warehouseman in good condition and destroyed, lost, or returned in a damaged condition, it then devolves upon him to acquit himself of negligence; that is, to show a lawful excuse for his failure or refusal to deliver the goods in compliance with the demand. Doubtless the Legislature considered that the warehouseman, who had control of the premises and the goods intrusted to his care, was better situated than the depositor to know the facts and circumstances under which the destruction, loss, or damage occurred, and is best able to prove them."

The court in the last-cited case, in its syllabus, announced the rule to be:

"Where goods are delivered in good condition to a warehouseman for hire, and it is shown that they have not been delivered on demand and payment of charges by the depositor, but have been destroyed by fire while in the custody of the warehouseman, the burden is upon him to absolve himself from negligence by showing a lawful excuse for his failure to deliver the goods in compliance with the demand."

Again, in the case of Federal Compress & Warehouse Co. v. Coleman (Miss.) 109 So. 20, which is probably one of the latest opinions by any of the state courts construing the Uniform Warehouse Receipts Act, so far as it is related to the burden of proof between bailor and bailee, the statute of that state provided:

"A warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver goods upon demand. * * * (Here follow conditions with which there must be compliance.) In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

The court in the said case announced the rule in its syllabus thereof to be:

"Under Uniform Warehouse Receipts Act (Laws 1920, c. 218), sections 3, 8, 21, 57, warehouseman has burden of showing lawful excuse for failure to deliver cotton stored, and must prove that loss by fire was not due to his negligence."

In the case of Commercial Nat. Bank v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Mr. Justice Hughes, speaking for the court, said:

"It is apparent that if these uniform acts are construed in the several states adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws. It was to prevent this result that the Uniform Warehouse Receipts Act expressly provides (section 57): 'This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.' This rule of construction requires that in order to accomplish the beneficent object of unifying, so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the fundamental purpose of the uniform act and that it should not be regarded merely as an offshoot of local law. * * * We think that the principle of the uniform act should have recognition to the exclusion of any inconsistent doctrine which may have previously obtained in any of the states enacting it. * * *"

In conformity with the opinion in this case on the former appeal, we hold that under the pleadings on retrial of this case it was the duty of the bailee to show that the loss, by fire, of the bailor's cotton was not due to any fault or negligence of the bailee.

Defendant's proposition number 3 is that the court committed error in giving certain instructions, especially No. 12 and No. 17.

We think the court's instructions to the jury were far more favorable to the defendant than was justified under the pleadings and proof in the case.

The defendant's fourth proposition is as follows:

"Error in refusing requested instructions."

A careful examination of the instructions offered by the defendant, together with the instructions given to the jury by the court, will show that the refusal of the court to submit to the jury all the instructions offered by the defendant did not constitute error, and especially is this true under the status of the pleadings and the order of proof submitted thereon.

Defendant's fifth proposition is:

"The evidence was insufficient to support the verdict."

We think that under the record the verdict was fully sustained by the evidence.

There was a large amount of cotton on hand at the time of the fire; the compress was located near the tracks of the C., R. I. & P. Ry. Co.; the fire was discovered and reported to the fire department some time before the night watchman attempted to report it. In fact, the blaze was seen several blocks away before the night watchman made an effort to give an alarm. If there had been that degree of diligence used which was highly necessary under the circumstances, it is improbable that the cotton would have been ignited, and if there had been that degree of watchfulness and care necessary under the circumstances, it is very probable the fire would have been discovered before it had reached an uncontrollable state.

When the night watchman finally discovered the fire, it had become uncontrollable, and unconquerable, either from the personal efforts of the night watchman or the fire department.

Judgment is affirmed.

HUNT, CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and RILEY, J., absent and not participating.