## In re BOSWELL.
### No. 29609–M.

District Court, S. D. California, Central Division.
Sept. 18, 1937.

Craig & Weller and Frank C. Weller, all of Los Angeles, Cal. (Thomas S. Tobin, of Los Angeles, Cal., of counsel), for trustee in bankruptcy.

Edmund Nelson and Hugo A. Steinmeyer, both of Los Angeles, Cal., for petitioner Bank of America National Trust & Savings Ass'n.

## McCORMICK, District Judge.

This is a review of a referee's order made in a bankruptcy proceeding wherein reclamation from the possession of the trustee in bankruptcy of specific personal property, being a substantial portion of the stock in trade of the bankrupt furniture merchant, is sought by petitioner under the authority of sections 3012 to 3343 inclusive, of the California Civil Code. The facts are undisputed, and relief was denied by the referee solely upon the ground that the aforesaid legislation, designated as chapter 3—A, division 3, part 4, title 14, of the Civil Code of California, is insufficient to meet the requirements of section 24 of article 4 of the Constitution of California. All parties to this review concede that there is but one question to be considered, namely, the correctness of the referee's conclusion of unconstitutionality of the enactment of the "Uniform Trust Receipts Law" by the California Legislature in 1935.

The applicable part of the state organic law (Const. art. 4, § 24) reads as follows: "Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title. No law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be reenacted and published at length as revised or amended."

The Legislature of the state of California at its 1935 session, in line with the interstate policy of unifying as far as possible the commercial laws of the country, enacted the "Uniform Trust Receipts Act" (Stat.1935, p. 1930, § 1). This act is codified in the above-mentioned Civil Code sections. It is, in the main, the same law that was accepted in 1933 by the National Conference of Commissioners on Uniform State Laws. The evolution of this important scheme of mercantile law to meet present needs of celerity in credit transactions is shown by the annual handbooks of the commissioners for the years 1925 to 1933, both inclusive.

The title of the questioned act is as follows: "An act to add a new chapter to Title XIV of Part IV of Division Third of the Civil Code to be known as Chapter III-A thereof, in relation to trust receipts and pledges of personal property unaccompanied by possession in the pledgee and to make uniform the law relating thereto and to amend section 2988 of the Civil Code relative to the lien of the pledgee."

This law became effective in September of that year, and has remained in full force and operation since that time.

According to the representations of counsel in this proceeding, the constitutionality of this important and progressive step in the business law of Califorina has never been considered or passed upon by the Supreme or appellate courts of the state, and from an independent search we have found no California state court decisions in which the basic validity of this legislation has been determined. This paucity of helpful state decisions is significant, and imposes an extraordinary responsibility upon a federal court that is considering the constitutionality of the state statute, especially on account of the specific attack that is made upon it in this review.

■ Undoubtedly, when the issue of the constitutionality of a local act with respect to the state basic law is absolutely necessary to the determination of a case or proceeding of which the federal court has on other grounds acquired jurisdiction, such court may not only pass upon the state constitutional issue even before the question has been considered by the state tribunals, but indeed it may often in such situations become the duty of the federal court to do so. This power, however, should always be exercised with caution,

and only with reluctance should the federal courts adjudge a state statute to be in conflict with the State Constitution before that question has been considered and determined by the state judiciary. Michigan Central R. R. v. Powers, 201 U.S. 245, 290, 26 S.Ct. 459, 50 L.Ed. 744.

■■ If there be reasonable doubt as to whether the questioned state law is within or without the State Constitution, a declaration of unconstitutionality is better left to state judicial authority and not primarily asserted by a federal District Court. Therefore, the asserted unconstitutionality must appear clear, certain, and conclusive before the federal courts of the first instance should strike down state legislation.

■ The substantial admitted facts shown by the referee's certificate and findings are that certain of the bankrupt's stock in trade, consisting of washers, ironers, refrigerators, and other merchandise, had been purchased by the bankrupt from wholesalers and others on open accounts. The title to such merchandise had passed to the bankrupt merchant and was in him at the time the petitioner banking institution loaned him two separate sums of money aggregating approximately $825. This money was used by the bankrupt to pay the wholesalers from whom the merchandise was purchased. The loans had not been entirely repaid at the time of the failure of the bankrupt or at the time of the institution of bankruptcy proceedings against him. To evidence these loans, the bankrupt gave to the bank two promissory notes, and also at the same time executed and delivered to it two separate instruments, each entitled "Trust Receipt," and each by its terms reciting that the bankrupt, therein denominated as "trustee" within the meaning of the "Uniform Trust Receipts Law," acknowledged the receipt from the petitioner, called therein "entruster," of the chattels above-mentioned, and that he was holding the same in trust for the petitioning bank; that there was granted to and held by the entruster a security interest, as defined in the California "Trust Receipts Law," in the merchandise to the amount of the respective notes and loans. The trust receipts stated that the merchandise entrusted should be by the trustee always made capable of separation and identification and that it would be returned to the entruster in good order on demand. The trustee was by the instruments expressly empowered to exhibit the merchandise for sale in his place of business and to sell it for the account of the entruster and at not less than minimum prices which are specifically set forth in the trust receipts and to hold the proceeds of sales separate from the trustee's own funds and to pay such proceeds without deduction to the entruster. The receipts further expressly state that the entruster may at any time cancel the trust receipt transaction and repossess itself of the merchandise described in the receipts or the proceeds thereof. There are recitals in each document that the receipt transaction terminates upon the happening of any of several events, among which are (a) nonpayment when due of any indebtedness, liability, or obligation of the trustee to the entruster; (b) the suspension, failure, or receivership of the trustee; (c) the institution of proceedings by or against the trustee under the bankruptcy laws of the United States. Upon termination of the trust receipt transaction the trustee agrees to pay proceeds from sales of the entrusted merchandise and to return unsold merchandise entrusted for which no returns have been paid according to the terms of the trust receipts and in satisfaction and extinguishment of all obligations thereof. In the event of recovery of the possession of the merchandise by the entruster the same shall be by the entruster sold as provided in section 3016.2 of the Civil Code of California, and the proceeds of such sale applied according to said Code section in discharge of the trustee's obligations to the entruster. There are other terms and conditions in the trust receipts that are not considered material to a consideration of the sole constitutional question before the court at this time in this review. The petitioner has complied with all requirements of the questioned statute to enable it to invoke its terms, if constitutional. It is further admitted that there are other creditors of the bankrupt who are unsecured, and it is also conceded that the petitioner claims nothing more nor less than a security lien under the questioned "Uniform Trust Receipts Act."

Counsel for the trustee in their brief and at the oral argument of this review ably discussed the complex and intricate character of this act and recounted at length grave changes that it introduces into the statutory commercial credit methods in the laws of California relating to pledg-

es, chattel mortgages, and conditional sales. Those arguments, however, have little if any pertinency to the concrete constitutional issue involved in this review. They are largely questions of policy, legislative and not judicial questions. We think that unless the "Uniform Trust Receipts Act" is clearly deficiently titled under the cited section of the California State Constitution the referee's conclusions and order cannot be confirmed, because the state of California undoubtedly has the power to modify or enlarge its laws relating to personal property, lien rights thereon, or credit mediums thereof, as well as filing and recordation requirements therein, providing it does so constitutionally. As adverted to, it is conceded that under the facts of the instant proceeding, if the assailed statute is constitutionally titled, the referee should have granted the petition in reclamation by an appropriate order.

Incidentally, it is pertinent to observe that the statute by its definition of affected entities, such as "Entruster," "Buyer in the Ordinary Course of Trade," "New Value," "Trustee," "Security Interest," restricts transactions that may be accomplished by this unique security device, and excludes many of the dangers that are anticipated by counsel for the trustee in bankruptcy.

A very interesting discussion of such unwarranted consequences of the "Uniform Trust Receipts Act" is to be found in volume 5 (1936) Fordham Law Review, pp. 17 and 240.

Now, what is the authoritatively approved rule by which a test is made to determine whether or not the title of a California legislative act conforms to the applicable constitutional requirements of that state?

Must the title meticulously include all elements or be a complete index of the text of the law? We think not. The constitutional section is not to be narrowly or technically interpreted, but is to be construed liberally to uphold proper legislation, all parts of which are reasonably germane. As the state's highest court has observed, the provision of the State Constitution under consideration was not designed as a loophole of escape from or as a means for the destruction of legitimate legislation.

It is not even essential that the best or even an accurate title be employed, as long as the title is suggestive of the legislative purpose. It need not be a catalogue of the enactment. Heron v. Riley, 209 Cal. 507, 289 P. 160. The title is constitutionally sufficient if it is a reasonably intelligent reference to the subject to which the legislation is to be addressed. Estate of Wellings, 192 Cal. 506, 221 P. 628. In other words, where the body of an act embraces provisions which are germane to the general subject stated in its title, the title shall be held sufficient to include all of the terms of the body of the act, and, if the title suggests to the mind the field of legislation which the text of the act includes, the title will not be held misleading or insufficient, or the act restricted in its operation. People v. Jordan, 172 Cal. 391, 156 P. 451. See, also, the recent decision of the California Supreme Court reiterating this guiding principle in Harris v. Fitting (Cal.Sup.) 69 P.(2d) 833.

When we examine the contents of the "Uniform Trust Receipts Act" in the light of the rules applied by the state's highest court to similar matters, we find the constitutional objection to this law untenable or at least of very doubtful merit.

Trust receipts have long been independent security devices employed in commercial credit transactions. In re Cattus (C. C.A.2, 1910) 183 F. 733.

Their use has become greatly extended in the United States since the automobile has assumed its nationwide and popular proportions in financing and credit requirements for this major industry. In re Bell Motor Co. (C.C.A.8) 45 F.(2d) 19. So that today these mercantile mediums, because of their beneficial features in quick credit transactions and their frequent judicial concern, have become thoroughly established and identified in business and law. When the term "Trust Receipt" is used in commerce, the credit and financial agencies of present-day activities associate it with a security instrumentality that resembles a pledge, a chattel mortgage, or a conditional sale contract, but which is exactly none of these mediums of trade and credit. It is a transaction germane to these instrumentalities because it is like them, closely allied and related to them. Some chief differences that readily enter the mind when the term is used include the absence of actual or immediate delivery or change of possession, the removal of notice, recordation or verification requirements, and the retention of title in the vendor.

752

The respondent trustee in bankruptcy eloquently animadverts that nowhere in the title to the questioned "Trust Receipts Law" is there any intimation that the Legislature intended to "tinker with the salutary provisions regarding chattel mortgages, their recordation, or sales, or assignment of merchandise in bulk * * * or conferring on merchants the right to mortgage their entire stock in trade secretly and without notice whatsoever, unless wholesalers maintain a Bureau at Sacramento to keep a daily check on the office of the Secretary of State."

But we think that mentioning the general and .commercially understood subject of "Trust Receipts" in the title connotes and suggests fields of state legislation concerning the requirements of valid chattel mortgages as against third parties and creditors, delivery and possession necessities under laws relating to personal property, and the title expressly states that the statute is aimed at "Trust receipts and pledges of personal property unaccompanied by possession in the pledgee." This terminology, in the light of historical efforts of financial and mercantile agencies in different states to remove conflicts and complications in the commercial law of the country, is a reasonably intelligent reference to changes that are found in the text of the "Uniform Trust Receipts Law."

The multitude of court decisions differ-,entiating between "Trust Receipts" and the other subjects affected by the text of the statute under consideration demonstrate the close alliance that exists between these subjects and makes them germane to one another. See General Motors Acceptance Corporation v. Kline (C.C.A.9) 78 F.(2d) 618; Arena v. Bank of Italy, 194 Cal. 195, 209, 228 P. 441, and cases cited in these decisions.

In conclusion, and as we are considering a state constitutional issue of first impression relating to a statute that has gone into extensive use in business in California and in many other states, we cannot concur in the learned referee's decision that the law does not adequately comply with section 24 of article 4 of the Constitution of the state of California.

The language of the United States Supreme Court in considering the "Uniform Warehouse Receipts Act" in Commercial Nat. Bank v. Canal-Louisiana Bank & Trust Co., 239 U.S. 520, 528, 36 S.Ct. 194, 197, 60 L.Ed. 417, Ann.Cas.1917E, 25, is considered a chart for our course in this similar effort of the state of California to join in the march of states removing some of the objectionable conflicts in the laws that regulate credit and business throughout the country. It was there stated by our highest judicial authority: "It is apparent that if these uniform acts are construed in the several states adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity, and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws. It was to prevent this, result that the uniform warehouse receipts. act expressly provides (§ 57): 'This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.' This rule of construction requires that in order to accomplish the beneficent object of unifying, so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the fundamental purpose of the uniform act, and that it should not be regarded merely as an offshoot .of local law. The cardinal principle of the act— which has been adopted in many states— is to give effect, within the limits stated, to the mercantile view of documents of title. There had been statutes in some of the states dealing with such documents, but there still remained diversity of legal rights under similar commercial transactions. We think that the principle of the uniform act should have recognition to the exclusion of any inconsistent doctrine which may have previously obtained 'in any of the states enacting it; and, in this view,. we deem it to be clear that, in the circumstances disclosed, the Commercial Bank took title to the warehouse receipts and to the cotton in question."

The order of the referee is not confirmed, but this matter is remanded to the referee to 'enter an appropriate order, under the facts as found by him under the petition in reclamation.