## J. P. HENRY *v.* S. C. DAVIS.

1. LANDLORD AND TENANT. *Landlord's lien. His right of seizure. Code of 1880.*

   The chapter of the Code of 1880, in relation to landlord and tenant, gives the former a lien for rent on all the agricultural products of the leased premises, and this lien is not affected by a removal of the products from the premises; and it gives the landlord the right to seize for rent the goods and chattels of the tenant other than agricultural products, but such right can only be exercised while the goods and chattels are on the leased premises, or within thirty days after their removal therefrom.

2. SAME. *Seizure under sect. 1306, Code 1880. Affidavit, what to contain.*

   To authorize the seizure, for rent, of goods and chattels of the tenant, off of the leased premises, within thirty days after their removal, as provided in sect. 1306 of the Code of 1880, it is not necessary that the affidavit for attachment shall state that the goods and chattels have been removed from the premises.

APPEAL from the Circuit Court of Leflore County.

Hon. C. H. CAMPBELL, Judge.

The case is sufficiently stated in the opinion of the court.

*Frank Johnston*, for the appellant.

The question presented is, whether the cotton raised on the leased premises could be levied on more than thirty days after its removal from the premises, or thirty days after the debt became due. Prior to the act of April 17, 1873 (Stats. 1873, p. 79), there was no lien for rent on personal property or crops. *Arbuckle* v. *Nelms*, 50 Miss. 556. Sect. 1301, Code 1880, clearly gives a statutory lien on all the " agricultural products,"— for both the claim for rent and the claim for supplies, — in favor of a landlord. Again, it does not give a lien on the " goods and chattels " generally on the leased premises for either rent or supplies. But it prescribes that an attachment, for rent as well as for supplies, may be levied on " any goods and chattels liable for rent," as well as, " on the agricultural products aforesaid." There is a clear distinction drawn between " goods and chattels " generally, and the " agricultural products." And the terms are not synonymous or co-extensive. There is a lien on the

one class and no lien on the other. The right to levy upon the "agricultural products," *eo nomine* is expressly given by sect. 1301; this in order to make the lien the more effectual. While without any lien (either for rent or supplies) on the "goods and chattels," they may be levied on by attachment for both classes of debt. This statutory lien on "the agricultural products of the leased premises, however and by whomsoever produced" to secure both rent and supplies, was intended to be something more than a remedy. It must have certainly the force and dignity of a judgment-lien. It must attach to the "agricultural products" and follow them. Sect. 1306, retaining and preserving this distinction between "agricultural products" and "goods and chattels," declares that where the "goods and chattels" are removed, the landlord may attach them, within thirty days, for his rent or supply claim. And the *proviso* vests in a purchaser in good faith for a valuable consideration, a good title to such "goods and chattels." But the idea is not suggested by the statute that the lien on the "agricultural products" could be divested by a removal and sale. On the contrary, this provision is restricted to the "goods and chattels," on which there was no lien. In the one case the landlord has only a remedy by attachment; in the other, a specific statutory lien, and the remedy by attachment. Mr. Hooker's argument is that the affidavit of appellant did not mention the fact of the removal. The reply to this is that the affidavit forms no part of the pleadings, which begin with the tenant's declaration. From the pleading on this point, it clearly appears (I mean on proper construction of the pleading) that the taking was within the thirty days after the removal, and the issue tendered was the simple fact of removal.

*H. S. Hooker*, for the appellee.

In the case at bar, an ordinary affidavit was made under sect. 1345, and a distress warrant was issued. This authorized or justified the sheriff in seizing the property of the tenant on the leased premises, but no further. To justify him

in seizing property not on the demised premises, the affidavit
and warrant must go further and show that the property was
at one time on the demised premises and had been removed
therefrom so that not sufficient property was left, or in the
language of the statute, "that the tenant had removed his
effects from the demised premises, so that there is no sufficient
property liable to distress left on said premises." Certainly,
the plaintiff might defeat an attachment based on sect. 1348
by showing that sufficient property was left on the demised
premises, or by showing that the property attached was never,
in fact, on the demised premises. Neither under the princi-
ples of the common law, nor under the statute, was the sher-
iff in this case justified in seizing property not on the demised
premises. There is nothing appearing in the whole record by
which he was justified in making a levy on property not found
on the demised premises. The defendant does not attempt to
avoid the plea by replying a fraudulent removal, or that no suf-
ficient property was left on the premises, etc. (if he could depart
from the original affidavit) ; but the simple legal question was
presented to the lower court "whether the sheriff was justi-
fied by the attachment in his hands, in seizing property not
on the demised premises. It can make no difference that
sect. 1301 of the Code gives the landlord a lien. The
question raised pertained to the manner in which the land-
lord shall enforce this peculiar remedy to which he has re-
sorted. If a resort is had by the landlord to this remedy,
we are unable to perceive how the nature and character of
the property seized can change and alter the character of the
proceedings. The proceedings are essentially the same,
whether the property levied on is cotton and corn or horses
and mules, whether they belong to the animal or vegetable
kingdom.

*Calhoon & Green*, on the same side.

If the action of the court, in overruling the demurrer to the
sixth plea to the avowry was correct, no reversal can be
had in any event. Was the sixth plea to the avowry good?

The avowry justifies, under sect. 1302 of the Code, which merely provides how an attachment for rent may be obtained when the rent is due and in arrear.    Other sections point out the modes of obtaining it for rent not due, or where the property has been removed from the leased premises, and different affidavits are necessary in the several cases.    It follows, that in order to discover how distress may be made under sect. 1302, we must look to the common law, which requires it to be made on the leased premises, except in the single case where the tenant moves property, in the face of the officer, in order to avoid the seizure.  The plea, therefore, that the cotton seized was not on the demised premises, was good, and the avowant had to controvert this, or confess and avoid it, or fail.    Taylor's L. & T., sect. 574 ;    *Bradley* v. *Piggott*, Walk. (Miss.) 348 ;    *Dudley* v. *Harvey*, 59 Miss. 34.    The case last cited is conclusive.    The avowry setting up the affidavit must stand or fall by it, and, the affidavit, being the foundation of the avowry, should have been replied to the plea, if it was valid.

CAMPBELL, C. J., delivered the opinion of the court.

The subject of controversy is six bales of cotton produced on the land of appellant, leased from him by the appellee, and seized under an attachment sued out by the appellant.    The cotton was replevied by the appellee, who exhibited his declaration, which was answered by the appellant, who justified the seizure by virtue of his claim for rent and advances for supplies as set forth in his avowry    This was pleaded to by the appellee, who, in his fourth plea, averred that said cotton had been. removed from the leased premises more than thirty days before the issuance of the attachment and more than that time after the indebtedness became due, and was not seized on the leased premises ; and in his sixth plea the appellee set up as a bar the fact that the cotton, when seized, was not on the leased premises, but had been removed therefrom.    The demurrer of the appellant to these pleas was overruled, and

judgment final was rendered against him on his refusal to plead over to the sixth plea, and this appears to be the real ground of complaint. The question, therefore, is whether the fact that cotton produced on the leased premises had been removed therefrom, and was not found thereon by the officer, could be lawfully seized elsewhere under the attachment, and whether, if the cotton had been removed from the leased premises, on which it was produced, thirty days prior to the attachment, and thirty days after the claim became due, it could still be seized.

The cotton produced on the leased premises was subject to a lien to secure the payment of the rent and advances for supplies (Code 1880, sect. 1301,) and removal from the leased premises did not defeat the lien or the right to pursue it and seize it to enforce the lien. There is a distinction between the agricultural products of the leased premises and other goods and chattels of the tenant. The statute creates a lien on the former, and gives the attachment to enforce it, while only a right to seize the latter is conferred. Goods and chattels of the tenant, other than agricultural products of the leased premises, are not subject to a lien for rent or advances for supplies, and they can be seized only on the premises, or off of them within the time prescribed by statute; but this limitation of time or place is not applicable to the agricultural products of the leased premises on which the landlord has a lien, with the right to enforce it by seizure under attachment wherever and whenever found.

It is not true that to authorize seizure of goods and chattels off of the leased premises, within thirty days after their removal, as provided by sect. 1306 of the Code of 1880, the affidavit for attachment must state that the goods had been removed. This section was not intended to give a cause for attachment, but to change the common-law rule which prohibited a distress of goods at any other place than the leased premises. Sects. 1301, 1304, and 1305, of the Code, prescribe the grounds or causes for attachment, and the forms given in

sects. 1345, 1347, and 1348, have reference to these several sections respectively.

Judgment reversed, demurrer to fourth and sixth pleas sustained, and cause remanded for further proceedings.