## JAMES C. FITZGERALD v. MACE FOWLKES.

LANDLORD AND TENANT. *Lien on agricultural products. Removal of tenant or products. Expiration of lease.*

Under sect. 1301 of the Code of 1880 a landlord has a lien on all the agricultural products of the leased premises, paramount to all other liens, claims or demands of any kind, to secure payment of the rent and for supplies furnished the tenant; and the right of the landlord to enforce this lien is not prejudiced or in any manner diminished by the termination of the lease and removal of the tenant from the demised premises, nor by the removal of the product from the premises, the lien, in either event continuing, until extinguished by lapse of the period prescribed by statute for its enforcement, just as if there had been no removal of the tenant, or of the products, respectively. The rule of law is different as to goods and chattels not agricultural products of the leased premises, and as to which the landlord has no lien, but only a right of seizure by attachment. *Henry* v. *Davis, ante,* p. 212, cited and approved.

APPEAL from Circuit Court of Chickasaw County.

Hon. J. W. BUCHANAN, Judge.

On the 14th of April, 1882, J. C. Fitzgerald sued out a writ of attachment against Mace Fowlkes, upon an affidavit alleging that Fowlkes was indebted to him to a certain extent for the rent of a certain tract of land, for the year 1881, and for supplies furnished Fowlkes during that year. The writ was levied upon five bales of cotton, which were left in the possession of Fowlkes, he giving a replevin bond therefor, as authorized by the statute.

Fowlkes then filed his declaration in replevin; and Fitzgerald, for a plea thereto, set up the indebtedness of the plaintiff to him for rent in arrear, and due upon a contract of rent for the year 1881, and for supplies furnished the plaintiff during that year, and that the cotton levied on was produced on the rented premises in that year. The plaintiff in replevin replied, denying that at the time the writ of attachment issued there was any indebtedness for rent or supplies, upon which such writ could be legally issued.

Upon the trial of the action of replevin, in September, 1882, it was admitted in the evidence adduced by the plain-

tiff, that he was indebted to the defendant for the rent of
a certain tract of land for the year 1881, and for supplies
furnished him that year, and that the cotton levied on was
grown upon the demised premises; but it was shown that the
lease terminated on the 31st of December, 1881; that the
plaintiff removed from the premises on the first of January,
1882, and became the tenant of a different landlord, with
whom he was still living at the time of the trial, and that the
cotton levied upon had been removed and was not on the
premises when the levy was made. The defendant offered in
evidence the contract of rent with the plaintiff for the year
1881; but the plaintiff objected to its admission " on the
ground that the relation of landlord and tenant had ceased to
exist, and that the plaintiff was not in possession of the land "
(at the time the writ of attachment was sued out). The ob-
jection was sustained. A verdict and judgment were rendered
for the plaintiff and the defendant appealed to this court.

*W. J. Lacey*, for the appellant.

At common law, where the term had ended and the tenant
had removed his effects, no distress could be had. But at
common law there existed no lien outside of a levy. The
agricultural lien laws of our State since 1867 have created a
choate lien on all the agricultural products raised on the de-
mised premises. This lien attached to the crops from the
moment they were planted. By virtue of this lien the land-
lord could pursue the products raised on his place, and obtain
satisfaction of the debt due him by his tenant. Was it in-
tended by the Code of 1880 to limit this lien to the term and
possession of the tenant? Counsel will not so contend. But
he will contend, that although the lien is still in existence, the
right to distrain terminates with the possession of the demised
premises by the tenant. In support of his position he relies
upon sect. 1308 of the Code of 1880. The first part of
this section gives the landlord the right to distrain after the
termination of the lease " in the same manner as if the same

had not been determined." The *proviso* limits the land-lord's right to a distress. By the terms of the *proviso* he can only distrain " within six months after the termination of the lease, and during the continuance of the landlord's title, or interest, and during the possession of the tenant from whom such arrears are claimed." . In this *proviso* we find three conditions : 1. That of time. 2. That of title, or interest in the landlord. 3. The possession by the tenant. As to the first condition we have only to say that the Legislature, with the codifier, looked to actual facts ; the nature of our crops — the necessary postponement of settlements, and the absolute impossibility of winding up the business of the year on the thirty-first day of December. As to the second we contend that " title or interest " are not used as synonymes, but represented in the legislative mind two distinct facts. The word " title " applies to the right of the landlord in the land rented. . The word "interest" applies to, and means, that portion of the crop to which, under contract, the landlord is entitled. But whether this view be correct or not, we hold it would be a strained construction to refer possession back to the term, and the occupancy under the term, and disregard its connection with the "title or interest" of the landlord. The inquiry necessarily arises as to what signification we are to give the words title or interest, or rather to what, regarding them as synonymes, we are to apply them. Shall we say' they apply to the " title or interest " the landlord has in the land demised, or shall we say that they apply to the products of that land? If the latter, then we have no difficulty in giving a signification to the word " possession." Construing sects. 1308 and 1306 together, we consider that it was the intention of the Legislature to regard the tenancy as existing so long as the claim of the landlord remained unsatisfied, and the fruits of the soil owned, or held, by him were within reach of summary process, and not disposed of within thirty days.

*A. Y. Harper*, for the appellee.

The pleadings in this case correspond substantially with the decision made, and the ruling of the judge is in accordance with the decision of *Patty* v. *Bogle*, 59 Miss. 491.   I think it is unnecessary to cite any further authority upon the question that the relation of landlord and tenant must subsist, that there must be privity of estate, at the time of suing out the attachment for rent, or the landlord must bring himself within the saving clause of the statute.   That is, the landlord's interest must continue, and the tenant must continue in possession of the premises.   It was contended in the court below that continuing in possession referred not to the lands, but possession of the property.   The meaning is too clear and the reason too obvious to admit of such a forced construction.   No levy or seizure of property removed off of the premises, after the rent is due, and after the expiration of thirty days, can be made anywhere, except on the premises.   This looks a little like an Irish bull, but I mean to say, that after the rent is due, and the property has been removed for over thirty days, no levy can be made ; but if the property is carried back to the premises, it can be taken and condemned under the distress-warrant, other conditions existing.   I, therefore, ask an affirmance of this case, as the very principle has just been settled by this court, in *Patty* v. *Bogle*, 59 Miss. 491.

CAMPBELL, C. J., delivered the opinion of the court.

The ruling of the Circuit Court in this case involved the affirmation of the proposition that the remedy of the landlord by attachment for rent and supplies is the same with respect to the agricultural products of the leased premises, as it is as to " any goods and chattels liable for rent," other than the agricultural products aforesaid.   This is contrary to the view of this court, lately announced in *Henry* v. *Davis, ante*, p. 212, in which it is held that the " limitation of time or place is not applicable to the agricultural products of the leased premises, on which the landlord has a lien, with the right to enforce

60 Miss. —18

it by seizure under attachment, wherever and whenever found."
The correctness of this view has been earnestly and vigor-
ously questioned by counsel, and we have anxiously re-exam-
ined the subject and maturely considered it in all its details.
Sect. 1301 of the Code of 1880 declares that the landlord shall
have a lien on all the agricultural products of the leased prem-
ises, which shall be paramount to all other liens, claims, or
demands of any kind, and this lien is given to secure the pay-
ment of rent and for supplies furnished. An attachment is
given as a means to enforce this lien, as well as to enforce the
claim of the landlord against goods of the tenant as to which
there is no lien. As to goods and chattels, not agricultural
products of the leased premises, the landlord has no lien, but
only a right of seizure by attachment. As to them a lien is
acquired by the levy of attachment, but the attachment is not
necessary to create a lien on agricultural products. The stat-
ute causes that to spring from the facts of their existence, and
the attachment is given as a convenient instrumentality for
making the lien available. Sect. 1301 is an addition to the law
of landlord and tenant, as it existed before the Code of 1880,
and creates rights in favor of the landlord, and for conven-
ience the machinery found provided by former Codes for en-
forcing payment of rent was adopted; but it is not to be
assumed that the lien created in favor of the landlord on the
agricultural products of his land, cultivated by means of sup-
plies he advanced, is to be rendered so precarious a charge
that it shall be lost by the lapse of a short time, or by the act
of the tenant in removing the products from the leased prem-
ises and selling them to one who buys in good faith, without
the knowledge of the lien of the landlord. A lien is a charge,
and it is not of the nature of a lien that it should be destroyed
by the act of another than him in whose favor it exists. It
adheres until it is lost by what the law declares sufficient to
extinguish it. It is foreign to all our notions of liens that
they should be lost, except by something other than the act
of the owner of the thing subject to the lien. If sect. 1301

existed as an independent provision of law creating the lien for which it provides, and made no reference to attachment for rent, it would be conceded that it furnished the measure of the rights of the landlord, and that any restriction of his rights found to arise from the remedy by attachment would not be claimed as an abridgment of his rights as conferred by the section giving him a lien. In other words, if the chapter on landlord and tenant, as found in the Codes of 1857 and 1871, and as contained in the Code of 1880, excluding sect. 1301, was all of that chapter, and sect. 1301 was a separate chapter, it would hardly be contended that the right of the landlord to a lien, paramount and dominant as it is declared to be, on all the agricultural products of the leased premises to secure him, was dwarfed and diminished by the restricted nature of the remedy by attachment provided for him in another chapter; but the right being created for his security, it would be held to extend the remedy co-extensive with the necessity for its enforcement, rather than that the limited and insufficient remedy should curtail the right. The greater should rule the lesser. The right expressly given, should not be made to yield to the inadequate machinery for its enforcement, and the right should be maintained whenever called in question. The right should shape the remedy and not *e converso*. The state in which the Legislature of 1880 found the law of landlord and tenant was this: In the Code of 1871 was "an act in relation to landlord and tenant," which had been transferred from the Code of 1857, into which it had been copied from former Codes. This act regulated the remedy of the landlord for rent, and was intended as a modification of the common law on that subject. It proceeded on the assumption of the existence of the common law, and changed it in several respects, so that the law of landlord and tenant here was held to be the common law as modified by the statute, and it was settled that, in this condition of the law, the landlord had no lien on the goods of his tenant on the leased premises, but only a right to seize them

in the manner provided by the statute.  The act of April 14th, 1876 (Phamphlet Act, p. 109), declared a lien in favor of the landlord on all the agricultural products of the leased premises for his rent and supplies advanced by him, and provided a means of enforcing the lien.  So that, in 1880, when the subject came to be considered by the Legislature it was found that the landlord had a remedy for rent, as provided by the chapter on that subject in the Code of 1871, unrepealed, and had the lien declared in his favor by the act of 1876, cited above, with the remedy it provided for enforcing the lien against the agricultural products subject to it.  The remedy by attachment might be employed against all goods and chattels liable to seizure for rent, and the remedy provided by the act of 1876 was for the enforcement of the lien it created, and was operative only against agricultural products.  It was determined by the Legislature to preserve and enlarge the rights of the landlord as to the agricultural products of the leased premises, and to provide the remedy by attachment for enforcing his demands both against agricultural products and other goods and chattels liable for rent or supplies.  Agricultural products are goods and chattels, but of a peculiar kind, and subject to a statutory charge enforceable by attachment.  Other goods and chattels are not subject to a lien, but are liable to seizure by attachment, under certain conditions prescribed.  These conditions are not applicable to agricultural products, because of the fact that the remedy must be made subservient to the right, and the preservation of the right requires that this class of goods and chattels made by statute, subject to an express charge, shall not escape it, by reason of the restricted nature of the remedy provided for other goods and chattels not subject to any charge, except as it may be imposed by the levy of attachment.  The difference consists in the different character of the things against which the remedy is given.  One class is subject to a charge enforceable by attachment as long as the charge remains.  The other may be charged by attachment under certain conditions.  As to

them the remedy creates the right. As to the other the law creates the right, and the remedy is given to make it available, and the remedy is co-extensive with the right.

We adhere to the view announced in *Henry* v. *Davis.*

Judgment reversed and cause remanded for a new trial.