MARINE BANK & TRUST CO. *v.* GREENVILLE SAVINGS BANK
& TRUST CO.

(Division B. Oct. 1, 1923.)

[97 South. 526. No. 23427.]

CHATTEL MORTGAGES. *Statute making record of mortgage on cotton crop notice of contents held not superseded by Uniform Warehouse Receipts Act.*

Section 2787, Code of 1906 (section 2291, Hemingway's Code), under which the recording of a mortgage or deed of trust on a crop of cotton operates as notice of the contents thereof, is not superseded or repealed by Uniform Warehouse Receipts Act (Acts 1920, p. 315) section 41, providing that a person to whom a negotiable receipt has been duly negotiated acquires (a) such

title as the person negotiating had for had ability to convey to a purchaser in good faith for value, and such title as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value; and (b) the direct obligation of the warehouseman to hold possession for him according to the terms of the receipt.

APPEAL from chancery court of Washington county.
HON. E. N. THOMAS, Chancellor.

Suit by the Greenville Savings Bank & Trust Company against the Marine Bank & Trust Company. From a decree for complainant, defendant appeals. Affirmed.

*Bell & White,* for appellants.

The negotiation of the warehouse receipts in this case was valid and binding.

I.  A RECORDED MORTGAGE CANNOT DESTROY IN EFFECT THE WAREHOUSE RECEIPTS ACT.  It is a presumption in law, not needing the citation of authority, that a legislative act is presumed to be purposeful and valid and that the legislature will not be presumed to have intended to do a vain thing.  The object of the Warehouse Receipts Act was to make negotiable these receipts and enable one to sell and transfer the receipts by delivery without further ado.  If each possible purchaser must search the records of the county in which the cotton is supposed to be raised, or adjoining county, then there could be no negotiation of the receipts.  Cotton could be raised in Washington county, or in any other county where the mortgage would be recorded, and stored in a county other than the one in which it was raised; the receipt would give no clue to where a mortgage might be recorded and any purchaser, under the construction asked by appellees, would proceed at his peril not knowing where to look for a mortgage and having no opportunity to look for it.  The consequence would be that the receipt would cease to be negotiable and the object of the act would be destroyed.  The fram-

ers of the act had in mind the possibility of exactly what has happened here, and provided a punishment for it, under sections 37 and 40.

II.  THE GREENVILLE SAVINGS BANK & TRUST COMPANY BY PERMITTING THE HANDLING OF THE COTTON BY THE RAISERS THEREOF AND THE POSSESSION BY THEM OF THE RECEIPTS IS IN A COURT OF EQUITY ESTOPPED AS TO THE APPELLANT WHO WAS THE PURCHASER FOR VALUE WITHOUT NOTICE.  Under section 40 we submit that the Greenville Savings Bank & Trust Company, by permitting the retention of these receipts is estopped from complaining. The act specifically states in section 40 that the receipts may be negotiated by any person to whom their possession or custody had been entrusted by the owner, placing this transaction directly within the terms of the act. The Greenville Savings Bank & Trust Company is certainly to blame because it permitted the negotiation of the receipts and cannot ask a purchaser in good faith to lose the money expended.  Its remedy is against the raiser of the cotton, against whom it may proceed clearly and against whom it may recover a judgment for any balance due it after an exhaustion of the other securities. There is nothing in the agreement of facts to show that the raisers of the cotton are insolvent, or that a judgment against them would not be good.  See *Pollard* v. *Reardon,* 76 So. 6.

III.  THE GREENVILLE SAVINGS BANK & TRUST COMPANY HAD OTHER SECURITY FOR ITS INDEBTEDNESS THAN THE COTTON WHICH IT PERMITTED TO BE SOLD AND THE MARINE BANK AND TRUST COMPANY HAS NO OTHER SECURITY FOR ITS DEBT.

*Boddie & Farish,* for appellees.

The appellee had its deed of trust on the cotton recorded as provided by law, and while the appellant had no actual notice, it did have constructive notice, so as to prevent it from being a purchaser in good faith.

There is no element of estoppel involved in this suit. The court will notice from the statement of facts that the appellee often made demands on the grantors in the deed of trust for the delivery of the cotton and the compress receipts, and the fact that the cotton was raised by the grantors in the deed of trust and the grantors hauled same to the compress and took the compress receipts therefor, and failed and refused to deliver same to appellee, certainly could not estop the appellee in a court of equity from claiming the cotton under its deed of trust and could not affect the lien of the deed of trust as to the cotton.

This suit will determine the relative rights of the appellant, the purchaser of negotiable receipts issued in conformity with the Uniform Warehouse Act, and of the mortgagee of the cotton covered by the receipts (appellee). No other question whatever is involved in this appeal. In construing section 41 of the act, the supreme court of Alabama in *Brown Mercantile Co. Inc.* v. *Yielding Bros. Department Store, Inc.*, 76 So. 4, says: "We think it clear that there is nothing in the language of this section which would justify the construction insisted upon by counsel for appellant. The expression therein, 'or had ability to convey to a purchaser in good faith for value,' clearly means, of course, provided such person was such purchaser in good faith for value. If the purchaser had actual notice, no one, for a moment, would contend that he was a purchaser in good faith. Our registration laws were enacted for the purpose of giving notice, and the mortgage here in question, having been duly recorded, gave the purchaser a constructive notice so as to prevent him from being a purchaser in good faith." We think this the correct construction, and it follows therefore that the appellant was not a purchaser in good faith. We think the Alabama case is decisive. The decree of the chancellor should be affirmed.

COOK, J., delivered the opinion of the case.

The complainant, Greenville Savings Bank & Trust Company, filed its bill of complaint in the chancery court of Washington county, seeking thereby to establish a lien upon certain cotton which was then stored in the warehouse of the Greenville Compress Company, and for which compress receipts had been issued and negotiated to the defendant, Marine Bank & Trust Company, and from a decree for the complainant this appeal was prosecuted.

The cause was submitted upon an agreed statement of facts, from which it appears: That on January 6, 1920, in order to secure a loan of fifteen thousand dollars, F. M. Moran and Dora Moran, his wife, W. B. Alexander, Jr., and W. W. Winston executed and delivered to the complainant a deed of trust covering certain lands located in Washington county, known as the "Muscadine plantation," and also all crops of cotton, corn, and hay to be planted and raised on said plantation during the year 1920, and this deed of trust was duly recorded in the mortgage records of the county. During the year 1920, the grantors in said deed of trust raised on this plantation the twelve bales of cotton described in the bill of complaint, and delivered the same to the Greenville Compress Company, and compress receipts were issued therefor and delivered to one of the said grantors; these receipts being numbered as set out in the bill of complaint and being negotiable in form. The said compress receipts were negotiated by one of the grantors in said deed of trust to the defendant, appellant, for value, without actual notice of the deed of trust, and this negotiation took place in the city of New Orleans, La. The complainant, appellee, had no knowledge of the negotiation of the compress receipts, and was in no way a party thereto. It is further agreed that the indebtedness described in the said deed of trust has never been paid in full to appellee, and there is now owing thereon a large sum of money, amounting to more than the value of the cotton involved in this litigation; that the appellee has not sufficient security to collect the indebtedness due it under said deed of trust, should it not receive

the said cotton; that the appellee has often made demands on the grantors in said deed of trust for the delivery of said cotton and the said compress receipts; and that the said grantors are now insolvent.

What are the relative rights of the mortgagee under a duly recorded mortgage on cotton, and the purchaser, in good faith, for value, without actual notice, of a negotiable receipt covering such cotton, issued by a public warehouseman in conformity with the Uniform Warehouse Receipts Act? Is the only question presented for decision by this record.

It is insisted by counsel for the appellant that, if it shall be held that our registration statute applies after the property covered by a mortgage or deed of trust is stored and a warehouse receipt issued therefor, the object and purpose of the Uniform Warehouse Receipts Act will be defeated, or, in effect, that this act is inconsistent with the registration and recordation statute, and that the same is repealed or superseded thereby. The title and rights acquired by one who purchases a negotiable receipt are set forth in section 41 of the act (section 79750l, Hemingway's Code 1921 Supp.), which reads as follows:

"A person to whom a negotiable receipt has been duly negotiated acquires thereby—

"(a) Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and

"(b) The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

Under the provisions of this section the purchaser of a negotiable receipt acquires only—"such title to the goods as the person negotiating the receipt to him or had ability to convey to a purchaser in good faith for value."

It will be readily admitted that a purchaser with actual notice of an existing mortgage is not a purchaser in good faith, for value, and would only acquire title subject to the lien of such mortgage. Under the provisions of sec⁻ tion 2787, Code of 1906 (section 2291, Hemingways Code'), when a mortgage or deed of trust has been duly executed and lodged with the chancery clerk of the proper county, to be recorded in the same manner that other conveyances are required to be recorded, it operates as notice to all subsequent purchasers of the 'contents of the instrument. The purpose of this statute is to give to all the world notice, actual or constructive, of the existence and contents of a recorded mortgage or deed of trust. It is not expressly repealed by the Uniform Warehouse Receipts Act, and we do not think there is anything in the provisions of this act that would justify us in holding that our registration laws have been superseded thereby or repealed by implication.

The Uniform Warehouse Receipts Act has been adopted in most of the states of the Union, but we have been cited to only one case involving the question here presented. In *Brown Mercantile Co.* v. *Yielding Bros. Department Store,* 200 Ala. 412, 76 So. 4, the supreme court of Alabama had under consideration the exact question now presented for our decision, and that court reached a conclusion in accord with the views herein expressed.

The appellant next contends that the appellee, by permitting the handling of the cotton by the raisers thereof and the possession by them of the receipts, is estopped as to the appellant, who was a purchaser for value without actual notice. We do not think the facts here create an estoppel against the appellee. There is nothing in the agreed statement of fact to show that the grantors in the deed of trust acquired and retained possession of the warehouse receipts with the knowledge or consent of the appellee; but, on the contrary, the agreement shows that appellee made repeated demands on the grantors for the delivery of the cotton and receipts. We are not unmind-

ful of the principle announced in *Commercial Bank* v. *Canal Bank,* 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25, where it is said:

"But if the owner of the goods has permitted another to be clothed with the apparent ownership through the possession of warehouse receipts, negotiable in form, there is abundant ground for protecting a *bona-fide* purchaser for value to whom the receipts have been negotiated."

We do not think the facts here bring this case within that principle, but, as said in *Commercial Bank* v. *Canal Bank, supra.*

"One who has no title to chattels cannot transfer title unless he has the owner's authority or the owner is estopped," and "in the absence of circumstances creating an estoppel, one without title cannot transfer it by the simple device of warehousing the goods and indorsing the receipts."

It follows, from the views herein expressed, that the decree of the court below must be affirmed.

*Affirmed.*