SCHMITT et al. v. FEDERAL COMPRESS & WAREHOUSE CO. et al.

(Division B. April 2, 1934.)

[153 So. 815. No. 31030.]

590

**P. W. Allen,** of Indianola, for appellants.

Moody & Johnson, of Indianola, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellee Federal Compress & Warehouse Company filed its bill of interpleader in the chancery court of Sunflower county against appellees Cohn Bros., a partnership composed of Samuel and Louis Cohn, and their tenants, J. B. and H. T. Crow, and appellants Andrew Schmitt and J. M. Watkins, cotton buyers, asking a decree of the court adjudicating who had the superior right to three bales of cotton stored with it on which Cohn Bros. claimed a landlord's and also a chattel mortgage lien for an indebtedness due them by their tenants, the Crows, and to which cotton appellants, Schmitt and Watkins, claimed title superior to such lien by purchase from J. B. Crow. There was a decree pro confesso against the Crows, answers by Schmitt and Watkins and Cohn Bros., and a hearing on bill, answers, and evidence, resulting in a decree in favor of Cohn Bros., from which decree appellants, Schmitt and Watkins, prosecute this appeal.

Cohn Bros. owned a farm near Shaw which was leased to J. B. and H. T. Crow for the years 1928 to 1932, inclusive. The three bales of cotton involved are of the

crop of 1932. The Crows were indebted to Cohn Bros. for supplies and rent for that year in an amount largely in excess of the value of the three bales of cotton. For the payment of the rent and supplies, in addition to the statutory lien, they had a deed of trust on all crops produced on the place. J. B. Crow stored the three bales of cotton with the Federal Compress & Warehouse Company at Shaw and received from the company its negotiable warehouse receipts in his name. These receipts were issued by the warehouse company in good faith. There was nothing to indicate that Crow did not have the right to store the cotton there and demand receipts in his own name. Later he sold the three bales of cotton to appellants, Schmitt and Watkins, and indorsed and delivered to them the warehouse receipts therefor. Appellants paid value for the cotton and had no notice of any facts indicating that Crow had no right to sell the cotton and transfer the receipts. In other words, it was shown, without dispute, that they purchased the cotton for value in good faith. Their case is this, that through a course of dealing between the Crows and Cohn Bros., covering the period from 1928 to 1932, inclusive, acquiesced in by Cohn Bros., the Crows had the right to store the cotton produced by them, receive negotiable warehouse receipts therefor, and sell the cotton, and out of the proceeds pay their rent and supply bills. Cohn Bros.' case is the converse, and in addition that the agreement was that all cotton produced by the tenants should be stored with the warehouse company at Indianola, and negotiable receipts therefor issued in the name of Cohn Bros. and J. B. Crow, and the cotton sold by them jointly.

As we understand counsel, there is no difference as to the law of the case; the question is one of fact. The argument on behalf of appellants, the cotton buyers, simply means that the chancellor's finding of facts was against the overwhelming weight of the evidence and the decree ought to be reversed on that ground. The evi-

dence is strong in their favor, but we are unable to say with confidence that the finding of the chancellor was against its great preponderance. It is true, as contended by appellants, that the evidence showed without dispute that during the tenancy of the Crows they stored some of the cotton in the name of J. B. Crow, who received negotiable warehouse receipts therefor and sold the cotton and turned the proceeds over to Cohn Bros. on their rent and supply bills. On the other hand, it showed that the balance of the cotton was stored in the name of Cohn Bros. and J. B. Crow, and negotiable receipts issued accordingly, and the cotton was sold by them jointly, and the proceeds applied to the rent and supply bills.

Samuel Cohn testified that the distinct agreement between his firm and the Crows was that all cotton produced on the leased premises should be stored in the warehouse at Indianola in the name of Cohn Bros. and J. B. Crow, and should be marketed by them jointly; that, when the cotton was stored otherwise, it was without the consent of his firm. He admitted that he took no steps to prevent the Crows from violating the agreement, but testified that he insisted on its being observed by them.

J. B. Crow testified. His testimony and that of Samuel Cohn was squarely in conflict. The chancellor believed Cohn's testimony. If he had not, he could not have rendered the decree he did.

Now the question is whether the violation of the agreement by the tenants, and the acceptance by Cohn Bros. of the fruits of such breach, constituted such a course of dealing as to protect a purchaser of the cotton from the Crows for value in good faith.

Section 3521, Code 1930, a section of the Uniform Warehouse Negotiable Receipts Act, is in this language:

"A person to whom a negotiable receipt has been duly negotiated acquires thereby:

"(a) Such title to the goods as the person negotiating

the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and

"(b) The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

Under the statute, Schmitt and Watkins, to whom the receipts were negotiated by the Crows, acquired such title to the cotton as the Crows had, or had ability to transfer to a purchaser in good faith for value. The cotton was incumbered by a landlord's rent and supply lien and in addition by a mortgage in favor of Cohn Bros. It is clear, therefore, that the Crows had no title to the cotton in the meaning of the statute. Did Cohn Bros., by a course of dealing, put it in the power of their tenants to convey a good title to a purchaser in good faith? We think this question must be answered in the negative.

McGee v. Carver, 141 Miss. 463, 106 So. 760, 761, appears to be the decision principally relied upon by appellants. We do not think that decision sustains appellants' contention. In that case there was a distinct agreement between the landlord and tenant, under the terms of which the latter was authorized to store the cotton, receive negotiable receipts therefor in his name, and sell the cotton. The court held that those facts constituted a waiver by the landlord, and the purchaser of the cotton for value in good faith from the tenant was protected. In the opinion the court used this language: "We are not here called on to determine whether the appellee could enforce his landlord's lien on the cotton, had it been deposited in the warehouse and a negotiable receipt therefor been issued to Norwood without his (the appellee's) consent; for, as hereinbefore set forth,

he permitted Norwood to store the cotton in the warehouse and receive a negotiable receipt therefor, thereby permitting him to be clothed with the apparent ownership of the cotton through the possession of the warehouse receipt. Having trusted Norwood with the indicia of ownership, he is precluded by the statute from asserting a lien thereon against one who purchased the warehouse receipt in good faith for value.''

The decisive fact in that case was that the tenant was intrusted by the landlord with the indicia of ownership to the cotton. In the present case that is not true. Samuel Cohn testified, as above shown, that his firm refused to intrust the Crows with the indicia of ownership. The chancellor believed that testimony, and appellants' apparent ownership was therefore the result of their own wrong.

Marine Bank & Trust Co. v. Greenville Savings Bank & Trust Co., 133 Miss. 91, 97 So. 526, is much nearer in point than the case above cited. This case was tried on agreed facts set out in the opinion as follows: ''That on January 6, 1920, in order to secure a loan of fifteen thousand dollars, F. M. Moran and Dora Moran, his wife, W. B. Alexander, Jr., and W. W. Winston executed and delivered to the complainant a deed of trust covering certain lands located in Washington county, known as the 'Muscadine plantation,' and also all crops of cotton, corn, and hay to be planted and raised on said plantation during the year 1920, and this deed of trust was duly recorded in the mortgage records of the county. During the year 1920, the grantors in said deed of trust raised on this plantation the twelve bales of cotton described in the bill of complaint, and delivered the same to the Greenville Compress Company, and compress receipts were issued therefor and delivered to one of the said grantors; these receipts being numbered as set out in the bill of complaint and being negotiable in form. The said compress receipts were negotiated by one of the grantors in said deed of trust to the defendant, appel-

lant, for value, without actual notice of the deed of trust, and this negotiation took place in the city of New Orleans, Louisiana. The complainant, appellee, had no knowledge of the negotiation of the compress receipts, and was in no way a party thereto.''

The court held that the mortgage lien was not superseded by the uniform Warehouse Receipts Act, and under the facts the mortgage lien on the cotton was superior to the right of the purchaser for value in good faith of the negotiable warehouse receipts.

We do not think a breach of the agreement as to part of the cotton by the Crows, with the knowledge of Cohn Bros., constituted a waiver by the latter. It did not vest in the Crows either title to the cotton or ability to ''convey to a purchaser in good faith for value.''

Affirmed.