PHILLIPS *v.* BOX.

In Banc. Oct. 25, 1948.

(37 So. (2d) 266)

John F. Frierson and Roger C. Landrum, for appellant.

232

**Thomas F. Paine**, for appellee.

Alexander, J.

In 1944, Box rented certain lands to Lane for a cash rental of $750 a year. Lane paid the first year's rental early in the season of 1944 and likewise in 1945. No rent was paid for the following year although the defendant made a crop thereon. This action was brought by the landlord to enforce an agricultural lien by attachment of three bales of cotton raised on the lands and which had been stored by the tenant in a warehouse. Lane had procured warehouse receipts therefor, which he transferred to appellant Phillips. One bale was released from the attachment, and the contest involved the two remaining bales. At the conclusion of the testimony, both parties requested directed verdicts. The trial court awarded judgment to the landlord for the two bales, or their value up to the amount of the balance due under the landlord's lien.

Although the case went off on a peremptory instruction for the landlord, his decision of necessity involved an appraisal of the facts upon the issue, conceded by both parties to be controlling, whether the landlord by his conduct, whether affirmative or negative, had waived his lien. We therefore cull the following facts relevant to this issue.

Rental having been paid in cash for the years 1944 and 1945, the matter of a landlord's lien was not involved therefor. No rent was paid for 1946. During the summer of that year, the tenant left the lands in order to procure employment in Alabama. His wife remained in charge of the lands, and planting operations continued. The tenant agreed to borrow the money, if necessary, to pay the rent. Landlord made five trips to the lands during September to check on the situation, with a view

to securing the rental payment. The wife of the tenant assured Box that they were picking cotton and would have it ginned in a few days. She stated that she planned to move to Alabama after the coming Christmas, but that her husband would return to the lands in a few days. Whereupon, Box returned to the place pursuant to such assurance only to find that the property had been vacated. No agricultural products were found against which a lien would be enforced.

Box finally located the tenant and his wife in Alabama. The tenant asked for additional time, and as part payment on the rent turned over to Box some farm equipment for a credit of $400. This left a balance due of $350. Inquiries led the landlord to certain probable sources from which he sought further property for attachment. He finally located two bales of cotton that had been raised on the lands and stored at the Monroe County Compress at Aberdeen. The warehouse receipts, although issued in the tenant's name, were sold to Phillips, but, at the request of tenant's wife, check therefor was changed so as to constitute her the payee. The sale of the cotton was effected, not at Aberdeen but in Columbus, about thirty miles distant. Box lived some thirty-five or forty miles from the lands in question. During none of the conversations with the tenant or his wife did the latter inform Box that the cotton had been gathered and ginned, or that they held warehouse receipts therefor. Neither the tenant nor his wife were subpoenaed as witnesses. The landlord's trip to Alabama to press his rent demand was about November first. The sale of the cotton was about a week later. Upon his return, he wrote to the tenant and enclosed two promissory notes, each in the sum of $175, due respectively six and twelve months after date. There was no attention paid to these.

The cause was brought to issue by declaration filed in replevin by Phillips against the constable who had levied upon the cotton, and an avowry by the landlord under

Code 1942, Sec. 932. The only witness for the plaintiff or claimant was the appellant's bookkeeper who testified to the purchase of the cotton through the receipts. The bill of sale and check to Mrs. Lane were exhibited. Other testimony was of a general nature, relevant chiefly as discloses of the value of the cotton.

Although the attachment was not sued out until January 25, 1947, the testimony of appellee is without dispute that action was taken by him promptly after his efforts to locate the cotton had been rewarded by their discovery in the warehouse at Aberdeen. We are of the opinion that while the conduct of Box after the sale of the cotton could be relevant to corroborate a prior waiver of his lien, materials for such alleged waiver must be gathered from the period preceding November 8th, when the receipts were transferred to appellant.

Regardless of whether the execution and acceptance of the promissory notes tendered by Box would have amounted to a waiver, the fact remains that they were not executed. We are not required to indicate what our conclusion would be if the trial judge had granted a peremptory instruction for the tenant. Waiver is not susceptible of definition in terms of special instances. Only general principles are stable. One such principle is that proof of such a waiver must be established by preponderant testimony which affirmatively shows an agreement by the landlord, or conduct tantamount thereto, that the tenant might deal with the cotton as if free of any lien. Tennessee Joint Stock Land Bank v. Bank of Greenwood, et al., 179 Miss. 534, 535, 172 So. 323, 328. The opinion states: "Fryer had the receipts issued in his own name and excluded the landlord without the latter's knowledge and consent. Under the facts of this record, Fryer was not clothed by the landlord with indicia of ownership—therefore no recognized principle of estoppel can be applied here, and the fact that the landlord did not promptly discover the trespass upon his rights by his tenant cannot be said to

be negligence which would, on any principle of estoppel, relieve the appellees from liability for their conversion of the cotton.''

We are confronted with the duty to steer a straight course between the shoals upon which good husbandry would be wrecked by unwise restriction of sound commercial practices and the negotiability of warehouse receipts undermined by a compelled suspicion, and away from the opposing threat to the established rights of a landlord who may be penalized by his confidence in the tenant. Between these extremes wherein, on the one hand, a purchaser of cotton always buys at his peril, and on the other where the landlord trusts his tenant at his peril, a median course must be found in the rule that the landlord's lien to the agricultural products remains paramount as security for unpaid rent. Code 1942, Sec. 908.

It would be no forbidding task to marshal in opposing array of those cases whose factual patterns have led to protection of the lien on the one hand and its loss on the other by agreement or waiver. Such cases are typified in Tennessee Joint Stock Land Bank v. Bank of Greenwood, supra, citing to support the former conclusion Fitzgerald v. Fowlkes, 60 Miss. 270; Henry v. Davis, 60 Miss. 212; Warren v. Jones, 70 Miss. 202, 14 So. 25; Schmidtt, et al. v. Federal Com-Press, etc., Co., 169 Miss. 589, 153 So. 815, and to sustain the latter, McGee v. Carver, 141 Miss. 463, 106 So. 760; Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25.

Commerce, as well as the law which protects it, must be conducted upon an assumption of honest dealing. It is no barrier to such commerce that the peril at which a purchaser buys such negotiable receipts is on occasion consummated in actual loss. It is then alone that such purchaser can save himself by proof that the tenant has dealt honestly with his landlord. If the lien is to remain

paramount, a tenant may not clothe himself with the indicia of ownership but it must be done by the hand of the landlord. A landlord does not trust his tenant at peril. In the instant case, Box never saw the cotton nor knew of its whereabouts nor when or whether it had been sold. He placed nothing in the tenants hands but his confidence. It is in this respect that such cases as Weil Brothers, Inc., v. Keenan, 180 Miss. 697, 178 So. 90, lose point.

We can find no basis for disturbing the finding of the learned trial judge that the landlord had not consented to a course of which he was not aware.

Affirmed.

**McGehee, J.,** (specially concurring).

There had been no established course of dealings in the instant case whereby the landlord had held the tenant out to cotton buyers or to sell the general public as having authority to sell his cotton. During the two preceding years, the tenant paid his rent in cash before the cotton crop was sold. Therefore, the landlord didn't have to consent for the tenant to sell the cotton; it had become of no concern to him, and he would have had no right to interfere.

As to the year in question, no one contends that the landlord told the tenant that he could sell the cotton. The only conversation in which it is claimed that the cotton was even mentioned was when the wife of the tenant told the landlord, on one of the several occasions when he went to the farm to see about collecting his rent, that they were picking the cotton and getting it ready to be ginned.

In the absence of any agreement to the contrary, a tenant always has the right, and it is his duty, to load the seed cotton on a conveyance and take it to a gin—a gin of his own choice, where it may be ginned at the

best available rate per hundred pounds. A landlord has no right to take charge of the cotton on a farm unless he has reason to believe that the tenant is about to dispose of it with the intention of defeating the lien for rent. The landlord may be a woman, and not expected to load the cotton and take it to a gin in person. There may be an absent landlord, as in the instant case, who is not required to accompany the tenant to the gin with each bale of cotton in order to protect his lien; and if the tenant takes the cotton from the gin to a warehouse and gets a negotiable receipt therefor, without the knowledge and consent of the landlord, then the purchaser thereof gets the same title that the tenant had—one subject to the landlord's lien, in the absence of an authorization to the tenant to store the cotton and sell it, or unless the landlord has entrusted the warehouse receipts to the tenant after learning that the cotton is in a warehouse.

And there is no contention in this case that the landlord ever knew that the warehouse receipts were in existence at the time the cotton was sold; and there is no proof that he ever discussed with the tenant or his wife the sale of the cotton, or held the tenant out as having such authority.

Neither the tenant nor his wife testified to make such a contention, the landlord testified to the contrary, and the cotton buyer did not testify at all, while his bookkeeper and agent in the purchase did not claim, as a witness at the trial, to have used any diligence whatsoever, when the cotton was being purchased from the wife of the tenant, to ascertain on whose land it was grown or whether the rent had been paid.

I do not think that the effect of any of our previous decisions is to hold that the paramount lien of the landlord has been displaced by the Uniform Warehouse Negotiable Receipts Act, except in cases where the tenant has been entrusted with such receipts by the landlord, and thereby placed in a position to negotiate them to an

innocent purchaser for value. And except to that extent, I do not think that the principle of law to the effect that where one of two innocent persons must suffer loss, it must fall on him who placed the third person in a position to cause the harm has any application against a landlord, since a tenant is always in such a position in regard to agricultural products by reason of the relationship of landlord and tenant in that he is entitled to possession of his crops until they have been made ready for sale.

**Montgomery, J.** (dissenting).

It is difficult for me to reconcile what is said in the majority opinion with what was said in Weil Bros., Inc., v. Keenan, 180 Miss. 697, 178 So. 90, 94. That case held: "A prime purpose of the Uniform Warehouse Receipts Act is to make the standard receipt issued by warehousemen for chattels documents of title so that people who honestly purchase these documents for value will be protected by the terms of the act as purchasers in good faith."

As I see it, the rights and duties of all of the parties here are settled by the terms of the Uniform Warehouse Receipts Act, Title 19, Chapter 16, Code 1942. Section 5048, Code 1942, provides that negotiable warehouse receipts, payable to bearer, may be negotiated by delivery. The receipts here involved were issued to Lane, or bearer.

Section 5051, Code 1942, provides that: "A negotiable receipt may be negotiated: (a) By the owner thereof, or, (b) By any person to whom the possession or custody of the receipt has been entrusted by the owner, if, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of the person to whom the possession or custody of the receipt has been entrusted, or if at the time of such entrusting the receipt is in such form that it may be negotiated by delivery."

Section 5052, Code 1942, provides that a person to whom a negotiable receipt has been duly negotiated acquires such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, etc.

Section 5058, Code 1942, provides:

"The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was induced by fraud, mistake, or duress to entrust the possession or custody of the receipt to such person, if the person to whom the receipt was negotiated, paid or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty, or fraud, or mistake or duress."

Section 5069, Code 1942, has, among other definitions, the following: "A thing is done in 'good faith' within the meaning of this article when it is in fact done honestly, whether it be done negligently or not."

Section 5068, Code 1942, provides: "This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

To my mind, the facts in this case are uncontrovertible that Box, the landlord, confided in and trusted his tenant, Lane. From the beginning of the harvesting season and continuously thereafter he was looking to Lane for the payment of the rent, either out of the sale of the crops or otherwise. He never instructed Lane, the tenant, to store the cotton crop in the Warehouse and take negotiable receipts in the name of the landlord. The only fair inference that can be placed on the testimony in this case is that Box expected Lane to pay the rent and he did not care if Lane sold the crops in his own name, and out of the proceeds paid the rent. He didn't care in whose name Lane warehoused the cotton or in whose name the negotiable receipts were issued. Box, the land-

lord, was silent on this in all of his dealings with his tenant, Lane. It is inescapable from the proof here that Box, the landlord, did nothing to procure the issuance of warehouse receipts in the name of the landlord and he never even suggested such a method to his tenant. Box never demanded of Lane that he deliver him the cotton or the warehouse receipts therefor. It is inescapable from the evidence here that Box entrusted Lane to have the negotiable warehouse receipts issued in the name of the tenant Lane or in any name he desired. When the landlord entrusted Lane to receive negotiable warehouse receipts in the name of Lane, he thereby clothed Lane with the indicia of ownership. As was said by the Supreme Court of the United States in Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 195, 60 L. Ed. 417, Ann. Cas. 1917E, 25:

"But if the owner of the goods has permitted another to be clothed with the apparent ownership through the possession of warehouse receipts, negotiable in form, there is abundant ground for protecting a bona fide purchaser for value to whom the receipts have been negotiated. . . . Aside from this, the intention is plain to facilitate the use of warehouse receipts as documents of title. . . . The warehouse receipt represents the goods, but the intrusting of the receipt, as stated, is more than the mere delivery of the goods; it is a representation that the one to whom the possession of the receipt has been so intrusted has the title to the goods. . . . The clear import of these goods provisions is that if the owner of the goods permits another to have the possession or custody of negotiable warehouse receipts running to the order of the latter, or to bearer, it is a representation of title upon which bona fide purchasers for value are entitled to rely, despite breaches of trust or violations of agreement on the part of the apparent owner."

In Consolidated Gin Co. v. Graybill, Tex. Civ. App., 46 S. W. (2d) 471, J. A. Minter, Landlord, and E. L. Ellison, tenant, ginned three bales of cotton and stored it in warehouse and three negotiable warehouse receipts were issued, one for each bale, to the tenant, Ellison, and in his name. Ellison sold the cotton to Graybill and delivered to him the negotiable warehouse receipts. Minter owned a one-fourth interest in the cotton for rent but the warehouse receipts contained no notation showing any interest in Minter. The lower court held Graybill to be an innocent purchaser for value in good faith and that he acquired title against the landlord, who had permitted receipts to be issued to the tenant. This action was affirmed on appeal.

In Mason et al. v. Exporters & Traders Compress Co. et al., Tex. Civ. App., 94 S. W. (2d) 758, 761, the court had under consideration the provisions of this same Uniform Warehouse Receipts Act, that we are here considering )Adopted by Texas Legislature in 1919) and there the court said:

"Therefore, the Legislature has by statute made possible the use of negotiable warehouse receipts as documents of title, and where the owner of the goods has permitted another to have the possession or custody of warehouse receipts negotiable by delivery, a purchaser in good faith for value can rely on the title of the apparent owner, or the person who is clothed with indicia of title, notwithstanding the apparent owner may have breached his duty in negotiating the receipt. Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417 [Ann. Cas. 1917E, 25]."

Let us also note, in passing, that Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., supra, was cited with approval by this Court in Weil Bros., Inc , v. Keenan, 180 Miss. 697, 178 So. 90, where this Court held that an owner of cotton who entrusts the negotiable warehouse receipts therefor to another, such

owner thereby vests the holder of such receipts with every indicia of ownership and on holder's sale of receipts to a cotton buyer, who purchases receipts in good faith for value without notice, such purchaser becomes rightful owner of receipts and of cotton.

In Marine Bank & Trust Co. v. Greenville Savings Bank & Trust Co., 1923, 133 Miss. 91, 97 So. 526, this Court declined to apply the rule later applied in Weil Bros., Inc., v. Keenan, supra, which is set out in the paragraph next hereinabove, for the reason that the agreed statement of facts therein showed the mortgagor had made repeated demands on the producer for the delivery of the cotton and receipts.

In the case before us, had the landlord, Box, made repeated demands on Lane for the delivery of the cotton and receipts, he would have preserved his landlord's lien under the rule announced in Marine Bank & Trust Co. v. Greenville Savings Bank, supra, but there is not one scintilla of proof in this record that Box ever demanded of Lane the delivery of the cotton and warehouse receipts and by not demanding the warehouse receipts Box entrusted the negotiable warehouse receipts to his tenant, Lane, and under the holding of this Court in Weil Bros., Inc., v. Keenan, supra, and the cases hereinabove cited, Box thereby vested Lane, as the holder of such receipts, with every indicia of ownership and when Lane sold and negotiated the receipts to Phillips, the cotton buyer, who purchased in good faith and for value without notice, Phillips, as such purchaser, became the rightful owner of the receipts and of the cotton as against the landlord Box, who had so clothed his tenant, Lane, with indicia of ownership and by so doing had made possible the sale by Lane to an innocent purchaser for value.

In my judgment, the judgment of the lower court should be reversed and judgment entered here for Phillips.