368 So.2d 241 (1979)
OXFORD PRODUCTION CREDIT ASSOCIATION
v.
Wyllo DYE.
No. 50902.
Supreme Court of Mississippi.
March 7, 1979.
Johnson & Adams, David E. Adams, Senatobia, for appellant.
Bailey & Trusty, Thomas W. Belleperche, Batesville, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
WALKER, Justice, for the Court:
This is a suit to enforce a security interest in a cotton crop. The credit association sued Robert Eddins, a farmer, and Wyllo Dye, a cotton buyer. The Chancery Court of Tate County entered a judgment of $65,437.18 plus attorney fees against Eddins and dismissed the suit against Dye. Eddins did not appeal the judgment. The credit association appeals the dismissal of defendant Dye.
The issue presented is whether the purchaser of a cotton crop, upon which there is a perfected security interest, may be sued and held jointly liable with the farmer/seller of the crop.
In 1975, the credit association made loans to Eddins in his cotton farming business. Among other things, the cotton crop was put up as collateral, and the credit association took the necessary steps to perfect their security interest in the cotton crop. Eddins defaulted on the loan in 1976, and upon default the credit association attempted to locate the collateral in order to foreclose. In the course of these attempts, the credit association learned that the cotton crop had been sold to Wyllo Dye. They then brought suit in the chancery court for a bill of accounting and other relief against both Eddins and Dye. The accounting revealed that Dye had made purchases of cotton from Eddins totalling $33,615.92.
Since Eddins did not appeal, the judgment of $65,437.18 against him on the promissory notes is final. In this appeal the credit association contends they should have a joint judgment against Eddins and Dye to the extent of the money paid by Dye to Eddins ($33,615.92) for the cotton crop which was the collateral for the loans.
The first question is whether the perfected security interest follows the sale of cotton to a cotton buyer. Mississippi Code Annotated section 75-9-306 (1972) provides in part:
(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
*242 Thus, absent other provisions of the Code, the perfected security interest would follow the sale of the cotton. Section 75-9-307 provides protection for buyers of goods and specifies that:
(1) A buyer in ordinary course of business (subsection (9) of Section 1-201 [§ 75-1-201(9)] other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
The language of the statute expressly excepts from its protection "a person buying farm products from a person engaged in farming operations."
The proof at trial showed that Eddins, the seller, was a farmer engaged in farming operations. Dye argues that the cotton was not a "farm product" since the cotton at the time of sale had been ginned and was in storage. However, Mississippi Code Annotated section 75-9-109(3) provides that goods are:
... "farm products" if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operation. If goods are farm products, they are neither equipment nor inventory. (Emphasis added).
Further, the sale was directly from Eddins, the farmer, to Dye, the cotton broker.
We hold that a perfected security interest in a cotton crop follows the sale of the crop to a cotton buyer who purchases from the farmer who produced the crop. See United States v. Pete Brown Enterprises, Inc., 328 F. Supp. 600 (N.D.Miss. 1971); United States v. Hughes, 340 F. Supp. 539 (N.D.Miss. 1972). See also Marine Bank & Trust Co. v. Greenville Savings Bank & Trust Co., 133 Miss. 91, 97 So. 526 (1923) (arriving at same result but precommercial code case).
The cotton broker argues that Commercial Credit "waived" their right to go against her by acquiescing in Eddins' sale of the cotton to her. To support this proposition, she cites United States v. Hext, 444 F.2d 804 (5th Cir.1971) and Clovis National Bank v. Thomas, 77 N.M. 554, 425 P.2d 726 (1967). Hext is distinguishable on the facts, and Clovis has been criticized in several cases and commentaries. See Baker Production Credit Association v. Long Creek Meat Co., Inc., 266 Or. 643, 513 P.2d 1129 (1973). The security agreement provides that the debtor "... will not further encumber, ... sell or otherwise dispose of the same [crops] without the written consent of the secured party." There was no evidence of written consent, therefore the cotton broker's argument must fail.
We note that the trial court failed to make any findings of fact or conclusions of law in its dismissal of the suit against the cotton broker. The court's opinion stated:
... even though the Court has some misgivings about the responsibility of this lady as a cotton buyer, she did have some responsibility in determining whether or not the merchandise had a lien on it. I have some serious questions in my mind whether or not she exercised that degree of diligence that she should have exercised. I don't think she did. But that notwithstanding pleadings as against her are dismissed with prejudice, ... . (Emphasis added).
The chancellor erred in dismissing the complaint as to the defendant cotton broker, Wyllo Dye. As we stated earlier in this opinion, a perfected security interest in a cotton crop follows the sale of the crop to a cotton buyer who purchases from the farmer who produced the crop. Wyllo Dye fits squarely within this rule and is liable to the Oxford Credit Association for sums paid to the farmer, Eddins,[1] for cotton to the *243 extent that such sums were not then paid over to the Credit Association.
Therefore, since the complaint was erroneously dismissed as to Wyllo Dye and since the chancellor did not make findings of fact from which this Court can determine the sums due, if any, from Dye to Oxford Credit Association, this cause is reversed and remanded to the lower court for a determination of that question.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE and BOWLING, JJ., concur.
COFER, J., took no part.
NOTES
[1] Oxford Credit Association does not claim any interest in the sums paid to Eddins' landlord by Wyllo Dye.