No. 29,377.

The Farmers Union Coöperative Creamery, *Appellee*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant*.

(288 Pac. 569.)

Opinion filed June 7, 1930.

*William R. Smith, Owen J. Wood, Alfred A. Scott* and *Alfred G. Armstrong,* all of Topeka, for the appellant.

*Grant W. Harrington,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action for damages to an interstate shipment of butter. The jury answered special questions and returned a verdict for plaintiff. Defendant has appealed.

Plaintiff manufactures butter at its plant in Kansas City, and on August 13, 1926, delivered to defendant, in good order at Kansas City, 100 boxes of creamery butter of the weight of 3,500 pounds and 10 tubs of creamery butter of the weight of 350 pounds, for transportation and delivery to the Central Provision Company, Wilkes-Barre, Pa. The damage claimed was that upon arrival at destination the butter was covered with green mold and was greatly deteriorated in value. In this case the amount of damages is not questioned if plaintiff is entitled to recovery. The negligence alleged by plaintiff was that the shipment had not received proper refrigeration while in transit. The defense, in addition to a general denial, was that if the butter at the time of its arrival at destination was covered by green mold, as alleged by plaintiff, such condition was not the fault of defendant, or of its connecting carriers, but resulted

solely in consequence of defect or vice in the shipment and the inherent nature thereof, in that the packages of butter already contained the germ which causes mold when loaded into the refrigerator car of defendant at Kansas City, and that no refrigeration which was practical would, or could, prevent the butter from becoming covered with spots of green mold. In answer to special questions the jury found that the refrigerator car in which the butter was loaded at Kansas City had previously been iced to capacity, and that the ice bunker of the car contained 5,500 pounds of ice when it reached Chicago; when the butter was unloaded at Chicago it was transported promptly by wagon to a cooler of the Wabash railroad, where it was kept from twenty to twenty-four hours in a temperature around 45 degrees, and was then loaded into a precooled refrigerator car containing plenty of ice, which car was re-iced at Detroit, Mich., and at Manchester, N. Y., and reached Wilkes-Barre with its ice bunkers three-fourths full. The jury also found that no other shipment of butter ever made by plaintiff became moldy; that the butter shipped in this case was wrapped in wrappers and packed in cartons furnished by the Central Provision Company, and that such wrappers and cartons had not been in storage at plaintiff's plant for a considerable length of time before being used, and that the moldy condition of the butter when it arrived at destination was not due to a vice in the shipment and the inherent nature thereof, in consequence of butter coming in contact with the mold germs present in the wrappers. The jury was asked, if it found a verdict for plaintiff, to state what acts of negligence any of the carriers handling the shipment were guilty of, and answered:

"From evidence introduced butter did not receive proper refrigeration from the time Santa Fe received it at the dock until it was put in refrigerator car."

Appellant contends that the negligence found by the jury was not within the issues, and says that, having been charged with a lack of proper refrigeration in transit, defendant had taken that to mean after it had been placed in the refrigerator car. There is no legal reason why defendant should have taken that view of the allegation of the petition. In *General Oil Co. v. Crain*, 209 U. S. 211, 228, the court said:

"The beginning and the ending of the transit which constitutes interstate commerce are easy to mark. The first is defined in *Coe v. Errol*, 116 U. S. 517, to be the point of time that an article is committed to a carrier for transportation to the state of its destination, . . ."

Plaintiff's allegation of negligence was that there had been a lack

of proper refrigeration at some time after the shipment had been delivered to the carrier and before it reached its destination. The shipment was as much in transit after defendant had taken possession of it, and before it was placed in the refrigerator car, as it was thereafter.

Appellant contends that it is shown that the cause of the deterioration of the butter was spores, which were in contact with the butter at the time it was delivered to defendant for shipment. The question whether the butter deteriorated because of the inherent nature or vice of the shipment was thoroughly tried out, and the jury's finding on that point is against the contention of appellant. There was evidence that the spores which caused the mold are present in the atmosphere; that the mold forms very slowly under proper refrigeration conditions, but in a temperature of 80 or 90 degrees would grow very rapidly. When the shipment reached Chicago its appearance indicated that the butter had been in a temperature of 80 to 90 degrees, for the butter in the tubs had apparently melted, so much so that the outside of the tubs was stained, and had again solidified. Since this condition could not have been brought about while the butter was in the refrigerator cars—iced, as the evidence disclosed and the jury found they were—the jury might reasonably infer that the butter had been subjected to a temperature of that kind after it was received by the carrier and before it was placed in the refrigerator car.

On the hearing of the motion for a new trial, defendant filed the affidavit of employees who handled the shipment at the place it was received. These affidavits were to the effect that the custom was to place the butter in the refrigerator cars at once, but the affiants were unable to state specifically how this shipment was handled. Appellant contends that a new trial should have been granted because of this showing. There was no showing of a good reason why this evidence could not have been produced at the trial, nor is it at all clear that it would have had a tendency to change the result. The fact that the butter had been heated at some time before it reached Chicago seems to have been clearly established. It was noted there on the freight bills, and no attempt is made to contradict that. The court was well within its discretion in declining to grant a new trial because of this showing.

Appellant complains of the language of some of the instructions of the court. There are sentences in the instructions which, stand-

ing alone, are subject to adverse criticism, but taken as a whole they fairly presented the case to the jury. On the point principally relied upon by defendant of the deterioration being the result of the inherent nature or vice of the commodity shipped, the instructions are quite full and complete.

Finding no material error in the record, the judgment of the court below is affirmed.