PURSE v. DETROIT HARBOR TERMINALS, INC.

1. WAREHOUSEMEN—POTATOES—DAMAGES—GENERAL STORAGE—GUARANTEED TEMPERATURE STORAGE—WAREHOUSE RECEIPTS.

Warehouse company, furnishing both general and guaranteed temperature storage facilities, which accepts potatoes for general storage undertakes to use reasonable care in storing them and, regardless of provision in both negotiable and non-negotiable warehouse receipts given therefor that it would not guarantee any temperature on such storage, it is liable for damage due to overheating from uninsulated steam pipes (2 Comp. Laws 1929, §§ 9566, 9584).

2. TRIAL — INSTRUCTIONS — PRESUMPTION OF NEGLIGENCE — WAREHOUSEMEN.

Instruction that badly damaged condition of potatoes stored with warehouse company cast upon it burden of overcoming presumption of negligence on its part held, proper.

3. Warehousemen—Loss Due to Natural Causes.

Owner who placed potatoes in general storage with warehouse company still had right to assume that following notice by latter of their defective condition, only loss he would sustain would be due to natural causes resulting from lapse of time.

4. Same—Overheated Storage.

Finding of jury that damage to potatoes stored with warehouseman was due to overheated condition of storage room *held,* justified by evidence.

5. Appeal and Error—Warehousemen—Damages.

Claim that damage to stored potatoes was due to natural causes was a proper subject for consideration of jury in assessing damages in action charging warehouseman with negligence in their keeping but it may not be considered on appeal where parties have stipulated that amount of verdict is not to be questioned.

Appeal from Wayne; Webster (Arthur), J. Submitted January 10, 1934. (Docket No. 112, Calendar No. 37,570.) Decided March 6, 1934.

Action by James N. Purse and Artie Purse, doing business as Purse Brothers, against Detroit Harbor Terminals, Inc., a Michigan corporation, for alleged negligence in storage of potatoes. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Douglas, Barbour, Desenberg & Purdy (Harold B. Desenberg,* of counsel), for plaintiffs.

*Bodman, Longley, Bogle, Middleton & Farley,* for defendant.

Nelson Sharpe, C. J. On October 22 and 23, 1930, the plaintiffs delivered to the defendant's warehouse in the city of Detroit 15 carloads of potatoes for storage. When removed by plaintiffs after December 26th of that year, they were found to be badly damaged, and this action was brought for recovery of

the loss thereby sustained. Plaintiffs had verdict and judgment for $4,933.15, from which the defendant has taken this appeal.

It is stipulated in the record—"that this appeal relates exclusively to the liability of the defendant for the condition of the potatoes and no question is presented as to the amount of the verdict if the defendant was liable to the plaintiff."

It was also stipulated "that when placed in storage the potatoes were sound," with slight exceptions, and—"that on December 26th, the potatoes had developed sprouts from one-half inch to one inch long and that by reason thereof had become more or less soft and spongy."

When delivery was made, the defendant issued to the plaintiffs for each carload a negotiable warehouse receipt and a nonnegotiable receipt acknowledging such delivery. Each of the negotiable receipts contained the following provisions:

"This company will not provide or guarantee any temperature on goods placed in general storage.

"This company will provide any desired temperature in cold storage if expressed hereon; but will not be responsible for results.

"Perishable goods, or goods which are susceptible to damage through temperature changes or other causes incident to general storage, are accepted in general storage only at owner's risk for such damages as might result from general storage conditions."

Each of the nonnegotiable receipts contained the following:

"This company will provide any desired temperature in cold storage if expressed hereon; but will not be responsible for results.

"This company will not provide or guarantee any temperature on goods placed in general storage.

"All property is stored at owner's risk, condition and quality unknown, said property to be removed by owner upon request."

When plaintiffs' employees inspected the potatoes on December 26th, they found them stored in a large room in which steam pipes, uninsulated, and then hot, were placed along one of the walls and the ceiling, and one of them, about eight inches in diameter, ran from the floor to the ceiling. Thermometers in the room at that time registered from 40 to 60 degrees above zero.

Plaintiffs' right to recover is based upon their claim that defendant was negligent in storing the potatoes in a room heated to such a temperature as to cause them to sprout and become soft and spongy and of little value.

In his instructions to the jury the trial court called their attention to the provisions in the receipts above quoted. He then read to them the following statutory provisions:

"A warehouseman may insert in a receipt issued by him any other terms and conditions: *provided,* That such terms and conditions shall not:

"(a)   Be contrary to the provisions of this act;

"(b)   In anywise impair his obligation to exercise that degree of care in the safe-keeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." 2 Comp. Laws 1929, § 9566.

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall

not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care." 2 Comp. Laws 1929, § 9584.

He instructed them that—"if the potatoes were delivered to them in good condition and returned damaged in such a way as does not usually occur by the exercise of proper care, then negligence of the defendants will be presumed, and the burden is upon the warehouse keeper to overcome this presumption by evidence showing due care."

The plaintiffs had no knowledge of the place in which the defendant intended to store the potatoes. They had the right to assume that they would be kept in a safe place and be returned to them in the condition in which they were delivered, with such deterioration as the lapse of time produces in such products. They were not chargeable with knowledge that the defendant would store them in a room in which there were uninsulated steam pipes which would increase the natural temperature thereof to such a degree as to render them in the condition in which they were found by plaintiffs, as conceded in the stipulation above referred to. While there is no direct evidence as to the temperature at which the room in which they were stored was usually kept, there is evidence that the condition in which plaintiffs found them on December 26th could have been produced only by heat in excess of that which reasonable care demanded.

Defendant's counsel insist that as the plaintiffs failed to avail themselves of the cold storage facilities of the defendant and put the potatoes in general storage, accepting receipts therefor which expressly negatived a guarantee of temperature and provided that, being perishable, they were stored at plaintiffs' risk, it was under no liability to plaintiffs

for the injury to the potatoes caused by the temperature of the room in which they were stored.

The provision in the receipts that the defendant would not "guarantee any temperature on goods placed in general storage" must be considered in the light of the statutory provision that a warehouseman may not in his receipt—"in anywise impair his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

A warehouseman to whom goods are brought for storage has no right to accept them unless he has a suitable place in which to keep them; in other words, by acceptance he undertakes to use reasonable care in storing them. What is reasonable care is, of course, dependent upon the nature of the goods stored, and may be much affected by the weather conditions. The trial court was clearly right in instructing the jury that the condition in which the potatoes were found on December 26th cast upon the defendant the burden of overcoming the presumption of negligence on its part by evidence showing due care.

The potatoes were inspected by defendant at the time it received them. On October 23, 1930, it wrote the plaintiffs:

"Confirming telephone conversation of yesterday, this is to advise that upon inspecting your cars of potatoes coming in here, inspections on which have gone forward to you, we found that some of these are showing signs of growth, some decay, and some frost.

"We would advise, Roe, as explained to you yesterday, that you watch these cars very closely and not allow these to remain in storage very long."

The "Roe" therein referred to was plaintiffs' superintendent who had attended to the delivery.

On January 9, 1931, the defendant again wrote plaintiffs:

"We have today made another inspection on your entire lot of potatoes you have stored with us in general storage.

"As you know, when these potatoes were received and put in storage, they showed more or less sprouts and notice upon inspection from time to time they are sprouting more and more. Would advise you have your inspector look at these potatoes and those that are showing the heaviest sprouts be removed as soon as possible. This for your information."

Counsel insist that by the failure of the plaintiffs to give attention to these letters they are estopped from recovering the damages herein claimed. Plaintiffs had the right to assume that their potatoes were being properly cared for by the defendant, and that the loss they would sustain by leaving them in storage, after the receipt of these letters, would be due to the deterioration naturally resulting from lapse of time in view of their condition when placed in storage. But the jury found, and the evidence clearly justified their finding, that the condition of the potatoes on December 26th was due to the heated condition of the room in which they were stored. And while the deterioration above referred to might have been considered by the jury in its assessment of damages, defendant's claim in this respect is met by the stipulation in the record that "no question is presented as to the amount of the verdict if the defendant was liable to the plaintiff."

No error appearing in the record, the judgment is affirmed.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.