876

No. 35,672

C. E. LEE, Sole Trader Doing Business as FORT SCOTT HIDE, FUR AND WOOL COMPANY, *Appellee*, v. THE MIDWEST COLD STORAGE & ICE CORPORATION, and CENTRAL SURETY AND INSURANCE CORPORATION, *Appellants*.

(130 P. 2d 574)

Opinion filed November 7, 1942.

*John Murphy*, of Kansas City, Mo., argued the cause, and *Walter B. Patterson, Frank O'Brien,* both of Fort Scott, *John T. Harding, David A. Murphy* and *R. Carter Tucker*, all of Kansas City, Mo., were on the briefs for the appellants.

*Douglas Hudson*, of Fort Scott, argued the cause, and *Harry Warren, Charles Warren* and *Howard Hudson*, all of Fort Scott, were on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This action has arisen out of an alleged breach of a warehouseman's duty to exercise due care of certain raw skunk hides which plaintiff had placed in defendant's cold-storage warehouse in Wyandotte county.

Defendants have brought the cause here for an intermediate appellate review of the trial court's rulings on the pleadings.

In plaintiff's petition it was alleged that he was a resident of Fort Scott and was engaged in the business of purchasing, processing, shipping and selling hides, furs and wool; that defendant, the Mid-

west Cold Storage and Ice Corporation, operated a bonded warehouse in Wyandotte county, in connection with which it maintained a cold-storage plant for the storage of perishable merchandise; that defendant had filed the requisite warehouseman's bond with the secretary of state in conformity with the statute (G. S. 1935, 82-165), and that this bond had been furnished by Central Surety and Insurance Corporation, codefendant herein.

Plaintiff alleged that on December 26, 1940, he delivered to defendant, at its cold-storage plant near Kansas City in Wyandotte county, 25 bags of furs for cold storage; that in said bags were 6,371 skunk pelts of the value of $2 each, which value was declared by plaintiff at the time of their placement in storage with defendant. Plaintiff also alleged that on December 29, 1940, he delivered to defendant for cold storage 33 additional bags of furs containing 8,363 skunk pelts of the value of $1.50 each, which value was declared by plaintiff at the time of their placement in storage with defendant.

Plaintiff alleged that on January 29, 1941, while preparing to remove some of the skunk hides, he learned that they had greatly deteriorated in value while in storage in defendant's warehouse, that the pelts had decomposed so that the fur slipped from the pelts, and that their market value had been greatly impaired; that the furs were withdrawn from storage between January 30 and February 19, 1941; that if they had been kept by defendant in the condition in which they were placed in storage as a reasonably careful owner would have kept them their total market value would have been $19,867.20; that on account of the deterioration and decomposition of the pelts while in storage in defendant's warehouse their value had so diminished as to cause loss and damage to plaintiff in the sum of $15,000. It was further alleged that the pelts were delivered to the defendant warehouseman in good condition and were returned by him in a damaged condition, which damages were caused by defendant's failure to exercise the care which a reasonably careful owner of similar goods would have exercised.

Attached to plaintiff's petition was a copy of the defendant warehouseman's bond filed with the secretary of state, on which the Central Surety and Insurance Corporation, codefendant herein, was surety in the penal sum of $15,000.

The defendants filed separate motions to require plaintiff to make his petition more definite and certain in many and various particu-

lars, most of which were overruled, but some of which were sustained in part, to wit, that the number, size, character of the pelts should be stated; that the basis on which their alleged value was fixed should be stated; that the actual condition of the pelts at the time of their delivery to defendant should be pleaded; that the number of pelts alleged to be damaged should be stated, and that the manner in which plaintiff claimed to have learned of the deterioration of the pelts while in storage should be set forth.

Plaintiff filed an amendment to his petition to conform to the requirements of the court, which, in brief, itemized the prices he had paid for the pelts and his expenses for commissions and trucking charges pertaining thereto. He alleged that all the pelts were examined by plaintiff immediately before their being stored with defendant and that they were then in sound A-1 condition; that all of the furs stored on December 26, 1940, were damaged, and 4,113 of the second lot of pelts stored on December 29 were damaged; and out of both lots 2,170 pelts were completely ruined and rendered wholly worthless; that in order to prevent further deterioration of the other pelts it was necessary to open the bales of pelts and scatter them in defendant's cold-storage room; that the actual cost of the 6,371 pelts of the first lot was $12,368.60 and the trucking and commission charges thereon were $416.30; that the actual cost of the 4,113 pelts of the second lot deposited with defendant on December 29, 1940, together with the pertinent commissions and trucking charges thereon was $5,152.04; that the actual cost of damaged and destroyed pelts out of the two lots placed in defendant's cold storage warehouse was $17,936.94, and that their actual market value in the condition in which they had been stored and which would have continued to be their fair market value when withdrawn from defendant's warehouse if they had been kept by defendant as a reasonably careful owner would have kept them was $19,867.20, based on the then current New York market price after deduction of transportation and selling costs.

Plaintiff's amendment to his petition also alleged that the total salvage returns on the damaged pelts, after plaintiff had done all that was possible to minimize the loss was $3,718.77, and that plaintiff's total damages were in excess of $15,000 but that he waived all claim for damages in excess of that amount against both defendants.

Following the filing of the foregoing amendment to the petition defendants filed separate demurrers on the ground that the petition

and amendment thereto did not state sufficient facts to constitute a cause of action.

These demurrers were overruled and both defendants appeal, assigning error on the partial overruling of their motions to make plaintiff's petition more definite and certain, and on the overruling of defendants' separate demurrers.

Touching the first error assigned, it is a general rule in this jurisdiction that motions to make a pleading more definite and certain are addressed to the trial court's discretion, and its rulings thereon are not open to intermediate appellate review. (*Birch v. Solomon, Nat'l Bank*, 121 Kan. 333, 246 Pac. 688; *Bankers Mortgage Co. v. Dole*, 136 Kan. 445, 16 P. 2d 499; *Hicks v. Parker*, 143 Kan. 763, 57 P. 2d 413.) There is an exception to this rule (*Lofland v. Croman*, 152 Kan. 312, 316, 103 P. 2d 772), but it is not pertinent here.

Under the error assigned on the trial court's ruling on defendants' demurrers, it is urged that because the property delivered to the warehouseman was perishable goods, that is, goods containing within themselves the natural inherent qualities which in time would cause their own destruction, the allegations of plaintiff's amended petition touching the sound A-1 condition of the pelts when they were delivered to defendant for cold storage, and that a month later they were found to have deteriorated and been greatly damaged, which deterioration and damage would not have occurred if defendant had cared for them as a careful owner of similar goods would have done, were not sufficient to state a cause of action. It is contended that good pleading, considering the nature of the bailed property, would have required plaintiff to allege specifically the facts wherein the defendant warehouseman was negligent in respect to the storage and care of the pelts and in what respect defendant failed to exercise the care a reasonably prudent owner would have used. It is argued that plaintiff's allegations of fault and failure on the part of the warehouseman were mere conclusions of the pleader. Counsel for appellant invokes the rule that where the trial court overrules a motion to require the allegations of a petition to be stated more definitely and with greater certainty, the petition is to be strictly construed against the pleader. Quite so, but the relevancy of that rule of pleading is not apparent here. Plaintiff did plead the pertinent facts of his cause of action in ordinary and concise language in conformity with the requirement of the civil

code (G..S. 1935, 60-704), and any repetitive matter the petition as amended may contain was induced by the motions of defendants.

Another fault which defendants find with· the petition is that it is uncertain whether plaintiff's action is based on .contract or tort.

If this criticism were more meritorious than it is, defendants might rely on the familiar rule that where it is doubtful whether a petition sounds in contract or in tort, every intendment is resolved in favor of construing it as an action on contract. (*Railway Co.'v. Hutchings,* 78 Kan. 758, 99 Pac. 230; *Delaney v. Implement Co.,* 79 Kan. 126, ·98 Pac. 781.) However, in the case at bar, nothing is left to intendment. The pleader alleges that he placed his goods in defendant's custody as a warehouseman, and joins the surety on his official bond, setting up the bond as an exhibit to his petition. We hold that the action was essentially predicated on alleged breach of the duty imposed on the warehouseman by our warehouse receipts act (G. S. 1935, 82-101 *et seq.*), "to exercise such care in regard to [goods entrusted to him] as a reasonably careful owner of similar goods would exercise," and holds him not "liable . . . for any loss or injury to the goods which could not have been avoided by the exercise of such care." (G. S. 1935, 82-121.) An action for breach of a statutory duty is essentially one in assumpsit, and the obligations thereof are those imposed by the statute. (G. S. 1935, ch. 82.)

Counsel for appellants cite and quote from decisions of other jurisdictions which hold that where goods are of a perishable nature it is incumbent on the plaintiff, in an action against a warehouseman for breach of his duty to care for such goods placed with him for storage, to allege and prove the specific facts wherein the warehouseman failed in the discharge of that duty. (8 C. J. S. 342 *et seq.*) However, we have precedents of our own which must not be overlooked. In *Wiley v. Locke,* 81 Kan. 143, 105 Pac. 11, certain household goods which had been delivered to a warehouseman were destroyed by fire. · In an action for their loss it was alleged that the warehouseman had failed to take proper care of them. The bailor recovered judgment, and on appeal this court said:

"When the [plaintiff] appellee proved that he had entrusted his goods to the appellants [warehousemen], who were unable to return them because they were burned, it then devolved upon the appellants to show that the loss did not occur through any want of care on their part." (p. 147.)

In *Caldwell v. Skinner,* 100 Kan. 567, 164 Pac. 1166, plaintiff recovered damages for the loss of certain goods which had been

destroyed by fire while in the custody of the defendant warehouse-men. On appeal it was contended that it was enough for defendants to plead the destruction of the goods by fire while stored in their warehouse, and that it was not necessary for them to plead and prove that the fire and consequent loss was without their fault. It was further contended that negligence is not presumed, and when it was shown that the goods were destroyed by fire the burden was then upon the plaintiffs to show that the fire was due to the negligence of the warehousemen. This court said:

"Cases are cited by defendants which tend to sustain their view, and there is a conflict of authority on the question, but the legislature has provided a different rule for establishing claims of this character. . . .

"Under the statute, if it be shown that goods were delivered to the warehouseman in good condition and destroyed, lost or returned in a damaged condition, it then devolves upon him to acquit himself of negligence; that is, to show a lawful excuse for his failure or refusal to deliver the goods in compliance with the demand. Doubtless the legislature considered that the warehouseman who had control of the premises and the goods entrusted to his care was better situated than the depositor to know the facts and circumstances under which the destruction, loss or damage occurred, and is best able to prove them." (p. 568.)

In examining decisions from other jurisdictions, there is a diversity of opinion touching the burden of proof on the question of a warehouseman's liability in respect to perishable goods. In *Ballston R. S. Co. v. Eastern States Refrig. Co.*, 126 N. Y. Supp. 857, it was held under a provision of the New York warehouseman statute identical with our own that where apples in fine condition when placed in a cold-storage warehouse in October, and continued in the same condition until February, but in April were scalded, discolored, and in a damaged condition, the warehouseman was required to account for their deterioration.

In *John Nix & Co. v. Herbert*, 149 Va. 131, 140 S. E. 121, 55 A. L. R. 1098, the action was for loss and damage to 4,577 barrels of apples, classed as sound under the usual tests of commerce, which had been placed in the cold-storage warehouse of defendant. On appeal from an adverse judgment, plaintiff complained of the trial court's instructions to the jury to the effect that the burden rested on plaintiff to prove by a preponderance of the evidence that the loss was due to the failure of the defendant to exercise such care as a reasonably prudent owner of similar goods would exercise; and

"Negligent acts or omissions of . . . (defendant) causing the injury must be affirmatively proved." (p. 136.)

But the supreme court of appeals reversed the judgment, holding that when the bailor had proved the apples to have been in good condition at the time of their delivery to the warehouseman and their subsequent deterioration, the burden was on the warehouseman to show that the loss and damage was not due to his failure to exercise due care.

In *Noel & Co. v. Schuur,* 140 Tenn. 245, 204 S. W. 632, which was another cold-storage case, the first section of the syllabus reads:

. "In action against warehousemen for failure to properly preserve celery in cold storage, plaintiff's evidence of delivery in sound condition and return in deteriorated condition established *prima-facie* case."

An often-cited case involving the same general question is *Holt Ice, etc., Co. v. Arthur Jordan Co.,* 25 Ind. App. 314, 57 N. E. 575, where the action was for damages to a quantity of butter placed in defendant's cold-storage rooms. On appeal from a judgment for plaintiff, defendant assigned error on certain of the trial court's instructions. In affirming the judgment the court of appeals held:

"An instruction in an action for damages to goods while in storage, to the effect that when plaintiff has shown that the bailee received the property in good condition, and returned it damaged, he has made out a *prima facie* case of negligence, but if defendant did account for the injury to the property in any manner consistent with the exercise of ordinary care on its part then plaintiff, in order to recover, must show that the damage occurred through negligence, states the law correctly."

See, also, *Purse v. Detroit Harbor Terminals,* 266 Mich. 92, 253 N. W. 228; *Traders Compress Co. v. Precure,* 140 Okla. 40, 282 Pac. 165, 71 A. L. R. 759; *Alabam's Freight Co. v. Jiminez,* 40 Ariz. 18, 9 P. 2d 194; and notes to sec. 21 of Uniform Warehouse Receipts Act in Cum. Supp. to 3 U. L. Ann., pp. 37, 38.

The textbooks and encyclopedias cite a multitude of cases where railroads have been subjected to damages for goods entrusted to them in good condition and which have been delivered to consignees in damaged condition, but it is needless to rely on them here, because while a railroad serves in two capacities, as a carrier, and betimes as a warehouseman, it is not always clear in which of these capacities its breach of duty occurred.

We incline to the view that in an action for loss and damage of perishable goods placed in a cold-storage warehouse, our rule an-

nounced in our Wiley-Locke and Caldwell-Skinner cases necessarily must be applied. Why put perishable goods like raw pelts in cold storage? To subject them to such low temperatures that their natural inherent tendency towards deterioration and decay will be arrested for a reasonable length of time. If a warehouseman is not equipped to operate a cold-storage warehouse to serve the needs of owners of perishable goods he should not undertake that service. And in the nature of any bailment in a cold-storage warehouse it would generally be impossible for the bailor to prove in what particular respects a warehouseman failed in his statutory duty to exercise the standard of care imposed on him by the statute. When the bailor has shown the facts touching the placing of his perishable goods in the cold-storage warehouse, and has shown that they were in sound first-class condition at that time, and that at a later time (of reasonable length) the goods had deteriorated and were in damaged condition, he has made a prima facie case of the warehouseman's failure to exercise such care of the goods as a careful owner would use in caring for his own property. This is merely an application of the well-known legal principle of *res ipsa loquitur*. It will then rest on the warehouseman to show, if he can, such facts as will withstand the prima facie case made against him. (8 C. J. S. 342.)

There is little else in this appeal that needs attention. Defendants' demurrer did not raise the point that plaintiff had not made a formal demand for the return of his property. The property was returned, so the want of a demand was immaterial. And it only needs careful perusal of *Parker Corn Co. v. Chicago, B. & Q. Rld. Co.*, 120 Kan. 484, 244 Pac. 240, to discern that it is not analogous to the one at bar. The case of *Farmers Union Coöp. Creamery v. Atchison, T. & S. F. Rly. Co.*, 130 Kan. 831, 288 Pac. 569, which was an action for damages to butter shipped in a railway refrigerator car, while not altogether analogous, tends to support the rule which governs the instant case, especially where the court, speaking by Mr. Justice Harvey, said:

"Appellant contends that it is shown that the cause of the deterioration of the butter was spores, which were in contact with the butter at the time it was delivered to defendant for shipment. The question whether the butter deteriorated because of the inherent nature or vice of the shipment was throughly tried out, and the jury's finding on that point is against the contention of appellant. There was evidence that the spores which caused the mold are present in the atmosphere; that the mold forms very slowly under proper re-

frigeration conditions, but in a temperature of 80 or 90 degrees would grow very rapidly. When the shipment reached Chicago its appearance indicated that the butter had been in a temperature of 80 to 90 degrees, for the butter in the tubs had apparently melted, so much so that the outside of the tubs was stained, and had again solidified. Since this condition could not have been brought about while the butter was in the refrigerator cars—iced, as the evidence disclosed and the jury found they were—the jury might reasonably infer that the butter had been subjected to a temperature of that kind after it was received by the carrier and before it was placed in the refrigerator car." (p. 833.)

The judgment is affirmed.